# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72328-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ALI ABUKAR MOHAMED, | ) | PUBLISHED |
| | ) | |
| Appellant. | ) | FILED: May 18, 2015 |
| | ) | |

Cox, J. — Ali Abukar Mohamed appeals his judgment and sentence for his four convictions of delivery of cocaine that included school zone enhancements for three of these convictions. He argues that the trial court improperly limited impeachment of a police informant who testified at trial. He claims that the lead detective, who also testified at trial, "improperly vouched" for the informant. Additionally, Mohamed seeks a remand for a new sentencing hearing based on his claim that the trial court improperly exercised its discretion based on a mistaken belief about sentencing enhancements. And he claims he is entitled to a mitigated exceptional sentence.

We hold that Mohamed failed to preserve the impeachment and vouching claims and cannot make them for the first time on appeal. But there are sentencing alternatives that are potentially available to him based on a correct understanding of sentencing enhancements. The trial court did not abuse its

discretion in denying his request for a mitigated exceptional sentence. Accordingly, we affirm his convictions and remand for a new sentencing hearing for the trial court to consider the full range of available sentencing options.

The Seattle Police Department (SPD) began its investigation in this case when a confidential informant told his handler, Detective Samuel DeJesus, that a man named "Dime" was selling crack cocaine out of his business. The informant later identified "Dime" as Mohamed.

Detective DeJesus arranged for the informant to make five "controlled buys" from Mohamed. The police indicated they were attempting to determine whether Mohamed also trafficked weapons.

Three of the controlled buys occurred between April 2012 and May 2012. The remaining two occurred in November 2012 and February 2013. On each occasion, Detective DeJesus gave the informant about $150 and the informant returned with a small rock of cocaine. The first four controlled buys took place at Mohamed's clothing store, which was about 300 feet from an elementary school. The final controlled buy took place in Mohamed's vehicle. During each transaction, the informant wore a hidden camera.

Based on these transactions, the State charged Mohamed, by amended information, with five counts of delivery of cocaine. Four counts included special allegations that the crimes were committed within 1,000 feet of a school.

The jury acquitted Mohamed of the first delivery charge and special allegation. It found him guilty of the other four delivery charges. The jury also found him guilty of the other three special allegations.

At sentencing, the parties agreed that each delivery conviction required imprisonment within a base standard range of 20 to 60 months. They also agreed that school zone enhancements of 24 months applied to each of the three convictions on the special allegations.

In his sentencing memorandum, Mohamed asked the trial court not to impose a standard sentence. Instead, he sought the imposition of an alternative sentence based either on a Parenting Sentencing Alternative (PSA) under RCW 9.94A.655 or a Drug Offender Sentencing Alternative (DOSA) under RCW 9.94A.660. He also sought a mitigated exceptional sentence based on what he called "sentencing entrapment" and "sentencing manipulation."[1]

In response, the State argued that sentence alternatives "only waive imposition of the standard range part of a sentence."[2] It further claimed, "The defendant *must* be sentenced to the School Zone Enhancements he was convicted on separate and distinctly from imposition of, or in the alternative to, the standard range."[3] It appears from the record that the State took the position that Mohamed "will be serving 72 months in prison for the [school zone] enhancements."[4]

At the sentencing hearing, the trial court made clear that it believed it had no authority to waive the enhancements if it chose to impose an alternative

---

[1] Clerk's Papers at 108-14.

[2] Id. at 151.

[3] Id. (emphasis in original).

[4] Id. at 152.

sentence, stating, "There has to be a 72-month sentence [enhancement]. I have no choice in the matter."[5] Accordingly, the court imposed concurrent sentences of 20 months on each of four delivery convictions. The court also imposed three school zone enhancements of 24 months each, to be served consecutively to each other and consecutively to the three delivery sentences, for a total sentence of 92 months.

Mohamed appeals.

## SENTENCING

Mohamed makes two arguments on appeal. First, he argues that the trial court mistakenly believed that it did not have the authority to waive the enhancements if it chose to impose either a PSA or a DOSA. Second, he contends that he is entitled to a remand for resentencing. We agree with both arguments.

### "Standard Range Sentence"

The threshold issue is whether the trial court had the authority to waive the 24-month school zone enhancements specified by RCW 9.94A.533(6) in favor of either of two sentencing alternatives.[6] One alternative was the drug offender sentencing alternative (DOSA) under RCW 9.94A.660. The other was the

---

[5] Report of Proceedings (August 1, 2014) at 594.

[6] Because the crimes of convictions in this case were committed at different times and sentencing must be done under the statutes in effect at the time the offenses were committed, the applicable statutes are former RCW 9.94A.533(6) (2011) and former RCW 9.94A.533(6) (2012). The language of subsection (6) of each former version of the statute is the same as the language in the current statute.

parenting sentencing alternative (PSA) under RCW 9.94A.655. Both of these two latter statutes provide sentencing alternatives that may be imposed in lieu of a sentence within the "standard sentence range" for eligible offenders.[7]

A court's fundamental objective in reading a statute is to ascertain and carry out the legislature's intent.[8] If a statute's meaning is plain on its face, then the court must give effect to that plain meaning.[9] Under the plain meaning rule, such meaning is derived from all that the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question.[10] A court should not adopt an interpretation that renders any portion of the statute meaningless or superfluous.[11] The meaning of a statute is a question of law that the court reviews de novo.[12]

Under RCW 9.94A.660(3), the DOSA statute:

> If the sentencing court determines that the offender is eligible for an alternative sentence under this section and that the alternative sentence is appropriate, *the court shall waive imposition of a sentence within the standard sentence range* and impose a sentence consisting of either a prison-based alternative under RCW 9.94A.662 or a residential chemical dependency treatment-based alternative under RCW 9.94A.664.[13]

---

[7] RCW 9.94A.660(3); RCW 9.94A.655(4).

[8] Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

[9] Id. at 9-10.

[10] Id. at 11.

[11] State v. Keller, 143 Wn.2d 267, 277, 19 P.3d 1030 (2001).

[12] Id. at 276.

[13] (Emphasis added.)

Similarly, under RCW 9.94A.655(4), the PSA statute:

> If the sentencing court determines that the offender is eligible for a sentencing alternative under this section and that the sentencing alternative is appropriate and should be imposed, *the court shall waive imposition of a sentence within the standard sentence range* and impose a sentence consisting of twelve months of community custody. The court shall consider the offender's criminal history when determining if the alternative is appropriate.[14]

Both of these alternative sentencing provisions permit a sentencing court to waive imposition of a sentence within the standard sentence range, conditioned on the court's determination that an offender is otherwise eligible for the alternative. Thus, the question is what "standard sentence range" means in these two statutes.

Division Three answered this question in Gutierrez v. Department of Corrections.[15] In that case, Ray Roy Gutierrez pleaded guilty to delivery of a controlled substance and stipulated to the related enhancement that the offense occurred within 1,000 feet of a school bus route.[16] The enhancement added 24 months to a base standard range of 12 to 20 months.[17] The parties jointly recommended a DOSA sentence to the court.[18] The DOSA statute required the trial court to impose a sentence at the midpoint of the "standard sentencing

---

[14] (Emphasis added.)

[15] 146 Wn. App. 151, 188 P.3d 546 (2008).

[16] Id. at 152-53.

[17] Id. at 153.

[18] Id.

6

range" and to divide that time evenly between incarceration and community custody.[19]

Based on the base standard range plus the enhancement, the trial court concluded that a standard range of 36 to 44 months applied at sentencing.[20] In accordance with the DOSA statute, it imposed a midrange sentence of 40 months and suspended half of that time, effectively requiring Gutierrez to serve 20 months in prison and 20 months on community custody.[21]

The Department of Corrections (DOC) challenged this computation of Gutierrez's DOSA sentence. It argued that the statutory scheme required Gutierrez to serve the entire 24-month school zone enhancement in total confinement.[22] It asserted that the DOSA portion of his sentence should be based on a 16-month sentence—the midpoint of the base 12 to 20 month range, exclusive of the 24-month enhancement.[23] Division Three disagreed. It concluded that the trial court did not err when it calculated Gutierrez's sentence.[24] In reaching this conclusion, the court reviewed the language of the statute governing drug crime enhancements in effect at that time, former RCW 9.94A.533(6) (2006). That statute provided:

---

[19] Id. (emphasis omitted) (quoting former RCW 9.94A.660(5)).

[20] Id.

[21] Id.

[22] Id.

[23] Id. at 154.

[24] Id. at 154-57.

> An additional twenty-four months shall be added to the standard sentence range for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435 or 9.94A.605. All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter.

The court rejected DOC's argument that the enhancement is a separate sentencing provision from the base "standard range" and that only the base is considered when determining a DOSA sentence.[25] It considered both the SRA's definition of "standard sentence range" and related case law and stated, "Uniformly, the enhanced range is considered a standard range term and a departure from that range is an exceptional sentence."[26]

The court next reasoned that the trial court's approach was consistent with the command of the first sentence of the statute that the enhancement be "**added** to the range rather than treated as a separate sentencing provision."[27] It stated, "Courts have routinely interpreted this command, as in the case of other enhancements, as increasing each end of the initial base range by the length specified for the enhancement."[28] And it stated, "A sentence range increased by an enhancement is still a standard range sentence."[29]

---

[25] Id. at 154-55.

[26] Id. at 155.

[27] Id.

[28] Id.

[29] Id.

The court then concluded, "[N]either the definition of 'standard sentence range' nor the longstanding practice of adding enhancements to a base range to create a new 'standard range' supports [DOC's] position that the phrase refers only to an unenhanced 'base' range."[30]

To our knowledge, no case has rejected the reasoning in Gutierrez. Moreover, the legislature has not amended the language of that subsection of the statute since that case was decided.

We agree with and expressly adopt the reasoning of Gutierrez.

Here, Mohamed was convicted of four counts of delivery of cocaine. The jury found by special verdict that three of these counts were committed within 1,000 feet of a school.

Mohamed sought three things at the sentencing hearing. He sought an alternative sentence under PSA. Alternatively, he sought a DOSA. Finally, he sought a mitigated exceptional sentence. The court denied all of these requests.

The trial court concluded that the base standard range was 20 to 60 months for each count, to run concurrently. Based on the jury's verdict, the court also concluded that three enhancements of 24 months each would apply to the delivery convictions.

As for the alternative sentences request, neither party brought Gutierrez to the attention of the sentencing court. Thus, the court was unaware of the reasoning of that case. Without the benefit of that knowledge, the court

---

[30] Id.

concluded that it lacked the authority to waive the enhancements if it chose to impose an alternative sentence.

The failure to consider waiving the school zone enhancements and imposing a DOSA or a PSA was error. That is because both of the governing statutes permit the waiver of "a sentence within the **standard sentence range**" if the court believes an offender is eligible for such an alternative sentence.[31] Because "standard sentence range" means the base sentence range plus enhancement of such range, a sentencing court may waive the enhancements as part of the standard sentence range under a DOSA or PSA.

We also conclude that Gutierrez is correct for another reason—the language in RCW 9.94A.533(6) differs from that used in the firearm and deadly weapon enhancement statutes.

"'[W]here the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent.'"[32]

Both the firearm and deadly weapon enhancement subsections expressly state that those enhancements "**shall be served in total confinement**."[33] In contrast, the school-zone enhancement subsection does not contain a similar requirement that the enhancement be served "in total confinement."[34] This

---

[31] RCW 9.94A.660(3), RCW 9.94A.655(4) (emphasis added).

[32] Guillen v. Contreras, 169 Wn.2d 769, 776, 238 P.3d 1168 (2010) (internal quotation marks omitted) (quoting State v. Jackson, 137 Wn.2d 712, 724, 976 P.2d 1229 (1999)).

[33] RCW 9.94A.533(3)(e), RCW 9.94A.533(4)(e) (emphasis added).

[34] See RCW 9.94A.533(6).

further supports the conclusion that the enhancements may be waived under a DOSA or a PSA.

The State makes several arguments, urging us not to follow the reasoning of Gutierrez. None are persuasive.

First, the State argues that the second sentence of RCW 9.94A.533(6) evidences the legislature's intent to require enhancements to run consecutively both to the base range or sentencing alternative and to each other. Specifically, the State emphasizes two words in that sentence: "All enhancements under this subsection shall run consecutively to **all other** sentencing provisions, for all offenses sentenced under this chapter."[35]

As we understand the State's argument, it reads the above language—"all other"—to negate the trial court's ability to waive enhancements as part of a PSA or DOSA. We disagree with this reading.

As the State correctly points out, this language was added to RCW 9.94A.533(6) in response to the supreme court's decision in State v. Jacobs.[36] The amendment's legislative history confirms this.

In Jacobs, the defendants were convicted of manufacturing a controlled substance within 1,000 feet of a school bus stop, while a person under 18 was present.[37] The sentencing court imposed two 24-month enhancements and

---

[35] Brief of Respondent at 27 (emphasis in original).

[36] 154 Wn.2d 596, 115 P.3d 281 (2005).

[37] Id. at 599.

applied them consecutively to each other.[38] The supreme court held that the first sentence of former RCW 9.94A.533(6) was ambiguous as to whether the enhancements were to be served "consecutively or concurrently to one another or to other enhancements."[39] The supreme court held the rule of lenity applied because of the ambiguity, concluding that the enhancements were to be served concurrently.[40]

In response, the legislature amended RCW 9.94A.533(6) by adding the second sentence to the subsection. The second sentence states: "All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter."[41] Significantly, nowhere either in the amendment or in the legislative history is there any suggestion that the amendment was intended to deal with any issue other than the ambiguity that the supreme court identified in Jacobs. That is, nothing shows an intent to limit the court's authority to waive the enhancements if it chose to impose an alternative sentence. Thus, the State's reliance on the words that it emphasizes in its argument is misplaced.

Even if we were to accept the State's argument that the legislature intended the enhancements to run consecutively to the DOSA or PSA, there would be more than one reasonable reading of this amendment. It is, at least,

---

[38] Id. at 600.

[39] Id. at 602.

[40] Id.

[41] RCW 9.94A.533(6).

equally plausible that the amendment does not address whether enhancements are to run "consecutively to each other." In that case, an ambiguity would exist. Thus, we would apply the rule of lenity to apply the less harsh reading to the statute.[42]

Second, the State argues, without citation to any authority, "By making the enhancements consecutive to each other and all other sentencing provisions, the legislature ensured that a defendant's total sentence would always be longer with a school zone enhancement than without it."[43] The contention that the legislature intended that a defendant's total sentence would "always" be longer with a school zone enhancement is simply untenable. That is because the alternative sentencing statues permit the waiver of a standard sentence range under the provisions of those statutes. Accordingly, this argument is unpersuasive.

Finally, the State asserts the "fault in the logic of Gutierrez comes to light when faced with a case like this one, where a defendant is convicted of multiple counts with separate school zone enhancements."[44] We disagree that there is any fault in the logic of Gutierrez. But this argument raises an issue of how to apply the principles of that case to this one.

In Gutierrez, there was one conviction for delivery of a controlled substance and one school bus route enhancement arising from that underlying conviction. Here, there were four separate convictions for delivery of cocaine

---

[42] Jacobs, 154 Wn.2d at 601.

[43] Brief of Respondent at 26.

[44] Id. at 28.

and three separate enhancements, each arising from separate underlying convictions.

In this case, the State took the position at sentencing that Mohamed "will be serving 72 months in prison for the [three school zone] enhancements."[45] This recommendation is necessarily based on the State's then view that the three school zone enhancements of 24 months each were to run consecutively to each other.

The sentencing court adopted this view, as evidenced by its statement at the hearing:

> There has to be a 72-month sentence [school zone enhancement].
> I have no choice in the matter.[46]

On appeal, the State argues that if we follow Gutierrez, "Mohamed's standard ranges become 44 to 84 months on counts two, three, and four . . . ."[47] This argument necessarily assumes that each enhancement runs consecutively to the corresponding underlying conviction, but not consecutively to each other. That is because each underlying conviction has a base range of 20 to 60 months. When a 24-month enhancement is added to each end, the result is 44 to 84 months.

---

[45] Clerk's Papers at 152.

[46] Report of Proceedings (August 1, 2014) at 594.

[47] Brief of Respondent at 29.

We note that the State's characterization of Mohamed's position is not consistent with his briefing on appeal.[48] But the State's characterization does illustrate that there is another plausible reading of the second sentence of RCW 9.94A.533(6).

On the briefing before us, we cannot reconcile these conflicting statements of how that second sentence of the statute should be properly read. But it is clear that determination of the correct standard sentence range, as we construe that phrase, impacts the correctness of the sentences the trial court imposed in this case. Moreover, it would also impact any DOSA or PSA that the court, in its discretion, could choose to impose if we remand for a new sentencing hearing.

In sum, the trial court had the authority to waive the enhancements if it chose to impose either a DOSA or a PSA. The trial court improperly concluded that it lacked such authority.

Finally, we note that the trial court also rejected Mohamed's request for a mitigated exceptional sentence. We hold that the court did not abuse its discretion when it denied this request.

In his sentencing memorandum, Mohamed sought a mitigated exceptional sentence based on what he called "sentencing entrapment" and "sentencing manipulation."[49] Specifically, he argued that the police took certain strategic

---

[48] See Appellant's Opening Brief at 10.

[49] Clerk's Papers at 108-13.

actions, such as increasing the number of controlled buys, to effectuate a higher sentence.

The trial court rejected his request, stating that it found "absolutely no evidence of entrapment."[50] The trial court considered the facts and properly exercised its discretion in rejecting the request on the basis made.

*Remedy*

Because the sentencing court mistakenly believed that it had no authority to waive the enhancements if it chose to impose an alternative sentence, a remaining question is whether Mohamed is entitled to a remedy. We conclude that he is entitled to remand for a new sentencing hearing so that the court may consider the full range of available options.

In In re Mulholland, the supreme court granted Daniel Mulholland's personal restraint petition and remanded for resentencing after concluding that the trial court sentenced Mulholland while it possessed "a mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which [Mulholland] may have been eligible."[51] While the record did not show that it was a certainty that the trial court would have imposed a mitigated exceptional sentence, "[T]he trial court's remarks indicat[ed] that it was a possibility," and the court concluded this was sufficient to warrant resentencing.[52]

---

[50] Report of Proceedings (August 1, 2014) at 618.

[51] 161 Wn.2d 322, 333, 166 P.3d 677 (2007).

[52] Id. at 334.

Here, in its sentencing memorandum, the State agreed that Mohamed was eligible for a prison based DOSA. The State also agreed that Mohamed was likely eligible for a PSA.[53] But it argued that "[a]s a practical matter, th[e] court should not grant a PSA in this case due to the fact that [Mohamed] will be serving 72 months in prison for the enhancements" and "[t]he purpose of the PSA would be completely nullified . . . ."[54] As we explained earlier in this opinion, this argument is based on an erroneous interpretation of the law.

The trial court accepted this erroneous interpretation and, after stating its belief that it lacked authority to grant a reduction of the school zone enhancements, it imposed the lowest standard range. This court cannot be confident that the trial court would impose the same sentence if informed of the proper law. For this reason, remand is appropriate.

The State argues that any error in the trial court's belief that it had no authority to reduce the school zone enhancements as part of an exceptional sentence was harmless because the trial court found that an exceptional sentence was not warranted. But an exceptional sentence is separate from the alternative sentencing provisions of a DOSA or PSA. As we explained earlier, and as the State acknowledged in its sentencing memorandum, a DOSA and a PSA were possible alternatives in this case. Thus, we reject this argument.

Accordingly, we remand to the trial court for a new sentencing hearing. At that hearing, the court will have the opportunity to consider the full range of

---

[53] Clerk's Papers at 152.

[54] Id.

17

sentencing options available to it. We express no opinion on what sentences are proper. That is left to the sound exercise of discretion by the trial court.

## LIMITING IMPEACHMENT

For the first time on appeal, Mohamed argues that the trial court improperly limited impeachment of the informant by excluding evidence of his prior criminal convictions. Specifically, he contends this violated his constitutional right to confront witnesses. Because he failed to preserve this claim below and the claim is not manifest, we decline to address it.

This court may refuse to review any claim of error that was not raised in the trial court.[55] And generally, a theory not presented to the trial court will not be considered on appeal.[56]

Prior to trial, the State disclosed that the informant had several prior convictions from 1997 to 2003. Mohamed sought to admit these convictions, arguing that the informant's "criminal activity while a paid informant for [SPD] goes to his trustworthiness, and shows that he violated [SPD] rules for confidential informants . . . ."[57] The State argued that the convictions were inadmissible under ER 609. The trial court agreed and excluded the evidence. Mohamed did not argue any constitutional claim below.

---

[55] RAP 2.5(a).

[56] Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 290, 840 P.2d 860 (1992).

[57] Clerk's Papers at 145.

On appeal, Mohamed concedes that the informant's prior convictions are inadmissible under ER 609. But he argues that the prior convictions should have been admitted "because the Sixth Amendment confrontation clause guarantees the right to present evidence of a witness's bias or motivation."[58]

Mohamed fails to show that he can raise this claim for the first time on appeal under RAP 2.5(a)(3). Under that rule, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. To raise an error for the first time on appeal, an appellant must demonstrate (1) the error is truly of constitutional dimension, and (2) the error is manifest.[59] "'Manifest in RAP 2.5(a)(3) requires a showing of actual prejudice.'"[60] "To demonstrate actual prejudice, there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'"[61] "[T]he focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review."[62]

---

[58] Appellant's Opening Brief at 6.

[59] State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

[60] Id. at 99 (internal quotation marks omitted) (quoting State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).

[61] Id. (alteration in original) (internal quotation marks omitted) (quoting Kirkman, 159 Wn.2d at 935).

[62] Id. at 99-100.

The Confrontation Clause of the Sixth Amendment guarantees the right to impeach prosecution witnesses with evidence of bias.[63] Thus, Mohamed raises an alleged error of constitutional magnitude.

But Mohamed fails to show that the alleged error was manifest. The exclusion of the informant's prior convictions did not have practical and identifiable consequences at trial. Mohamed was able to successfully attack the informant's credibility at trial even without this evidence. For example, Mohamed elicited testimony from the informant that he was not always truthful with Detective DeJesus and lied to him twice. Mohamed also elicited testimony from the informant that, after this operation began, he bought and delivered cocaine without SPD's permission and that SPD would just scold him. In closing argument, Mohamed argued that the informant was not authorized to sell or deliver cocaine, he was violating the law and the detective "turned a blind eye."[64] Thus, Mohamed was able to argue his bias theory to the jury.

## VOUCHING

For the first time on appeal, Mohamed argues that Detective DeJesus improperly vouched for the credibility of the informant while testifying. Because he did not preserve this claim below and has not shown he may do so on appeal, we decline to reach this issue.

"Generally, witnesses are not permitted to testify regarding the veracity of another witness because such testimony invades the province of the jury as the

---

[63] State v. Johnson, 90 Wn. App. 54, 69, 950 P.2d 981 (1998).

[64] Report of Proceedings (June 30, 2014) at 537.

fact finder in a trial."[65] "Such testimony from a law enforcement officer may be especially prejudicial because the officer's testimony often carries a special aura of reliability."[66]

As stated earlier, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. "Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error."[67] "'Manifest error' requires a nearly explicit statement by the witness that the witness believed the accusing victim."[68]

Here, Mohamed alleges that Detective DeJesus testified to an improper opinion on the informant's credibility when he testified that the informant was "very honest." This testimony was elicited when the prosecutor asked Detective DeJesus to describe the informant. He replied:

> Oh, he's about five-eight, kind of dark-skinned, 63 years old, very nice guy, great worker, **very honest**, and very—well, he's been with us for 20 years, so he's very professional when it comes to the work, so.[69]

---

[65] State v. Demery, 144 Wn.2d 753, 764, 30 P.3d 1278 (2001).

[66] Id. at 765.

[67] Kirkman, 159 Wn.2d at 936.

[68] Id.

[69] Report of Proceedings (June 24, 2014) at 82 (emphasis added).

Mohamed's attorney did not object to this testimony, so he must demonstrate that this claim falls within the scope of RAP 2.5. Mohamed does not articulate how this meets the requirements of that rule.

Impermissible opinion testimony regarding credibility raises an alleged error of constitutional dimension—the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury.[70]

Thus, the next question is whether this error is manifest. We fail to see how this comment had practical and identifiable consequences in the trial of the case. The comment was fleeting and was about the informant's honesty in general. It was not an explicit statement by the detective that he believed the informant in this case. In context, it is strikingly different than when a prosecutor directly asks a witness about the credibility of another witness or where the credibility assessment is the focal point of the witness's answer. In short, because Mohamed fails to show actual prejudice, we conclude that this is not a manifest constitutional error.

We affirm the convictions and remand for a new sentencing hearing for the trial court to consider the full range of available sentencing options.

Cox, J.

WE CONCUR:

Trickey, J.                                    Spearman, C.J.

---

[70] See Kirkman, 159 Wn.2d at 927.

22