# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73009-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| IGNACIO MOLINA PEREZ, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: March 7, 2016 |
| | ) | |

Cox, J. – "'Generally, witnesses are not permitted to testify regarding the veracity of another witness because such testimony invades the province of the jury as the fact finder in a trial.'"[1] Here, a detective did not provide improper opinion testimony on a witness's credibility. Even if the detective's testimony was improper opinion testimony, the error was harmless because it did not materially affect the trial outcome. We affirm.

In October 2013, the Seattle police department collaborated with other agencies in an undercover drug operation. Detective Pete Lazarou worked with a confidential informant, Justin Woodard, in the operation. Woodard approached Ignacio Perez to purchase cocaine while under surveillance. Woodard and Perez allegedly exchanged money for the cocaine. Woodard returned to Detective Lazarou with the cocaine. The police arrested Perez.

---

[1] State v. Mohamed, 187 Wn. App. 630, 650, 350 P.3d 671 (2015) (quoting State v. Demery, 144 Wn.2d 753, 764, 30 P.3d 1278 (2001) (plurality opinion)).

The State charged Perez with delivering a controlled substance. Perez's case proceeded to trial, and Detective Lazarou testified.

On direct examination, the State asked Detective Lazarou about the process of using a confidential informant. Detective Lazarou stated that the Seattle police department conducts "reliability buys [to] prove [informants] to be reliable." The State then asked Detective Lazarou to describe the "reliability buy" process, and Perez objected on the basis of "[i]mproper bolstering." The trial court overruled the objection. Detective Lazarou described the process, stating police "deem [the informant] reliable" if the informant follows their directions while buying narcotics before the informant is placed into the field. Detective Lazarou then testified that he performed these preliminary buys with Woodard before placing him in the field.

The jury found Perez guilty as charged. The court entered its judgment and sentence on the jury verdict.

Perez appeals.

## WITNESS VOUCHING

Perez argues that Detective Lazarou vouched for Woodard, depriving Perez of a fair trial. We disagree.

Trial courts have "wide discretion to determine the admissibility of evidence."[2] We review for abuse of discretion a trial court's decision to admit evidence.[3]

---

[2] Demery, 144 Wn.2d at 758.
[3] State v. Quaale, 182 Wn.2d 191, 196, 340 P.3d 213 (2014).

*Opinion Testimony*

"'Generally, witnesses are not permitted to testify regarding the veracity of another witness because such testimony invades the province of the jury as the fact finder in a trial.'"[4] A witness's expression of personal belief about a witness's veracity is inappropriate opinion testimony.[5]

The trial court must determine whether evidence is admissible opinion testimony when it is offered.[6] The court must consider "(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact."[7]

Specifically, the State cannot indirectly vouch for a witness by eliciting police officer testimony concerning the credibility of a crucial witness.[8] "Such testimony from a law enforcement officer may be especially prejudicial because the officer's testimony often carries a special aura of reliability."[9]

State v. Kirkman[10] is instructive. In that case, Charles Kirkman and Ruben Candia were convicted of child rape.[11] Detective Kerr's testimony described his involvement in Kirkman's case.[12] He interviewed the victim and testified to the "preliminary competency protocol" he used to determine the victim's ability to tell

---

[4] Mohamed, 187 Wn. App. at 650 (quoting Demery, 144 Wn.2d at 764).
[5] State v. Perez-Valdez, 172 Wn.2d 808, 817, 265 P.3d 853 (2011).
[6] Quaale, 182 Wn.2d at 199.
[7] Id. at 199-200.
[8] State v. Chavez, 76 Wn. App. 293, 299, 884 P.2d 624 (1994).
[9] Demery, 144 Wn.2d at 765.
[10] 159 Wn.2d 918, 155 P.3d 125 (2007).
[11] Id. at 921.
[12] Id. at 922.

the truth.[13] He conducted this protocol because he was "'interested in'" the

victim's ability "'to distinguish between truth and lies.'"[14] He stated that the victim

distinguished truth from lies, that he asked the victim to promise to tell the truth,

and that the victim explicitly promised to do so.[15]

Similarly, in Candia's case, Detective Greer's testimony described the

competency protocol she conducted to determine the victim's ability to

distinguish truth from lies.[16] Detective Greer also asked the victim to promise to

tell the truth.[17]

Kirkman and Candia argued that the detectives improperly testified to the

victims' credibility.[18] The supreme court determined that Detective Kerr's

testimony "simply" accounted for the interview protocol used to obtain the victim's

statement and "'merely provided the necessary context that enabled the jury to

assess the reasonableness of the . . . responses.'"[19] The court also concluded

that Detective Kerr did not testify that he believed the victim or that she told the

truth.[20] The court made a similar conclusion as to Detective Greer's testimony.[21]

The court also stated that such protocol "does not carry a 'special aura of

reliability' beyond the 'special aura of reliability' conferred upon a witness when a

---

[13] Id. at 922-23.
[14] Id. at 930.
[15] Id. at 922, 930.
[16] Id. at 925.
[17] Id.
[18] Id. at 929.
[19] Id. at 931 (alteration in original) (quoting Demery, 144 Wn.2d at 764).
[20] Id.
[21] Id. at 934.

judge swears him or her to tell the truth in front of the jury at trial."[22] Thus, the court concluded that a detective's testimony as to interview protocol "does not improperly comment of the truthfulness of the victim."[23]

Here, the portion of Detective Lazarou's testimony at issue described the process of obtaining and using a confidential informant. The testimony included descriptions of how the police connect with the informant, the preliminary actions taken, and informant compensation. Detective Lazarou's testimony did not speak to the ultimate issue at trial—whether Perez delivered a controlled substance.

On direct examination, Detective Lazarou was asked about the process of using a confidential informant. Detective Lazarou stated that Seattle police department conducts "reliability buys [to] prove [informants] to be reliable." Detective Lazarou also stated they "deem [the informant] reliable" if the informant follows their directions while buying narcotics before placing the informant in the field. Detective Lazarou then testified that Woodard performed these preliminary buys.

This testimony "simply" accounted for the protocol used to obtain confidential informants and "'provided the necessary context'" for Woodard's prior testimony, enabling the jury to assess Woodard's involvement and the

---

[22] Id. at 931.
[23] Id. at 934.

"'reasonableness of [his] responses.'"[24] More importantly, Detective Lazarou did not testify that he believed Woodard or that Woodard told the truth.

Thus, this evidence was not improper opinion testimony. Accordingly, the trial court did not abuse its discretion by admitting this testimony.

*Harmless error*

Even if we concluded that Detective Lazarou's testimony was improper opinion testimony, the error was harmless under the facts of this case.

We apply the nonconstitutional harmless error standard to evidentiary errors.[25] Under this standard, "'an accused cannot avail himself of error as a ground for reversal unless it has been prejudicial.'"[26] An "'error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[27]

Here, admitting the portion of Detective Lazarou's testimony at issue did not prejudice Perez. His testimony was cumulative of other evidence.

Woodard testified that he and Perez exchanged the money and cocaine in a "hand to hand" manner, where they essentially shook hands to do the exchange. Woodard later testified that the exchange was not a hand to hand transaction and that he "was wrong." Rather, Perez placed the cocaine on a newspaper stand, then Woodard handed him the money and took the cocaine.

---

[24] Id. at 931 (quoting Demery, 144 Wn.2d at 764).

[25] See State v. Garcia, 179 Wn.2d 828, 848, 318 P.3d 266 (2014).

[26] State v. Barry, 183 Wn.2d 297, 303, 352 P.3d 161 (2015) (quoting State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)).

[27] Id. (emphasis omitted) (internal quotation marks omitted) (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

Detective Edward Hagerty testified to his involvement in the case, stating that he saw Detective Lazarou search Woodard to ensure Woodard did not possess narcotics before the transaction with Perez. Detective Lazarou went through Woodard's pockets and had Woodard empty his pockets. No contraband was found during this search.

Detective Hagerty saw that Woodard had returned with cocaine after meeting Perez. Detective Hagerty also observed Detective Lazarou search Woodard after the transaction. Again, there was no contraband.

Detective Lazarou described his search of Woodard before the transaction. He found no contraband on Woodard. He also found no contraband on Woodard when he returned with cocaine.

Officer Andrew Zwaschka testified that he observed the transaction. Officer Zwaschka observed Woodard and Perez meet and "exchange[] something." He also observed Woodard "g[i]ve the [successful buy] signal." This led Officer Zwaschka "to believe that a suspected narcotics transaction had just occurred." He also "saw what [he] suspected was a hand-to-hand transaction."

Detective Clayton Agate also testified to seeing and photographing Woodard's meeting with Perez during the alleged transaction.

In sum, the testimony of detectives and officers other than Detective Lazarou evidenced their observations and involvement in Woodard's transaction with Perez. Thus, this testimony was not the only evidence available to the jury to determine guilt. Accordingly, admission of this detective's testimony was cumulative for purposes of the jury finding Perez guilty.

7

In sum, any prejudice that could have resulted from an erroneous admission of the detective's testimony would not have "'materially affected'" the trial outcome.[28]

Perez argues that Detective Lazarou's vouching for Woodard deprived Perez of a fair trial. He specifically argues that Detective Lazarou's testimony constituted the police's opinion "that Woodard was a proven reliable and thus credible witness."

As explained earlier, admission of this portion of Detective Lazarou's testimony was proper. And even if this were improper, it would be harmless.

Perez also argues that the erroneous admission of Detective Lazarou's testimony was prejudicial because "Woodard's testimony was crucial to the State's case." As previously discussed, Woodard's testimony was not crucial for the jury to find Perez guilty. Other detectives and officers testified to their involvement in the case and their observation of the transaction. Thus, their testimony was also available to the jury as evidence of guilt.

## STATEMENT OF ADDITIONAL GROUNDS

Pursuant to RAP 10.10, Perez raises three additional grounds for review. He argues that he received ineffective assistance of counsel due to a "failure to investigate or consult."[29] He also argues that the trial court abused its discretion by allowing a false statement. Lastly, he argues that the trial court abused its

---

[28] Barry, 183 Wn.2d at 303 (internal quotation marks omitted) (quoting Smith, 106 Wn.2d at 780).

[29] Statement of Additional Grounds at 1.

discretion by improperly limiting his time for trial preparation. Because this record is inadequate to review these issues, we decline to review them.

On direct appeal, we do not consider matters outside the record.[30] "The appropriate means of raising matters outside our record is through the filing of a personal restraint petition."[31]

Here, this record on appeal does not allow us to review Perez's claims. Specifically, the record is silent as to how or what his counsel allegedly failed to investigate. The record is also silent as to how Perez's counsel allegedly failed to consult with him, what statement was "false" and how the court allowed it, or how the court improperly limited Perez's time for trial preparation.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

---

[30] State v. Kinzle, 181 Wn. App. 774, 786, 326 P.3d 870, review denied, 181 Wn.2d 1019 (2014).
[31] State v. Hart, 188 Wn. App. 453, 466, 353 P.3d 253 (2015).