IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 81350-1-I |
| Respondent, | DIVISION ONE |
| v. | |
| WARREN EDWARD RING, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — While suffering from a delusion, Warren Ring fired a gun from his car at an SUV behind him. Ring later pleaded guilty to two charges of second degree assault, each with a firearm enhancement. The trial court sentenced him to nine months for each assault charge running concurrently, followed by two consecutive 36-month firearm enhancements for a total of 81 months confinement. Ring appeals, claiming (1) the trial court erred by declining to consider whether to run the firearm enhancements concurrently, and (2) that RCW 9.94A.533 violates the Eighth Amendment to the United States Constitution by rendering firearm enhancements mandatory. For the reasons discussed below, we affirm.

I. BACKGROUND

Ring is a military veteran with a mental health disorder related to post traumatic stress disorder (PTSD), depression, and anxiety. While driving his car at night, Ring stopped and fired his gun at an SUV behind him with two passengers. Ring then drove away and stopped in a parking lot, where he called

Citations and pin cites are based on the Westlaw online version of the cited material.

911 to report that he had just shot at the vehicle. Ring told the 911 dispatcher that he fired at the SUV because he believed the driver was pursuing him and that it made him fear for his life. Ring waited in the parking lot until officers arrived and arrested him.

The State charged Ring with two counts of second degree assault, each with a firearm allegation. Ring pleaded guilty to both counts.

The standard range for Ring's convictions was 12 to 14 months for each second degree assault charge. Each charge carried a 36-month firearm enhancement, leading to a standard sentencing range of 84 to 86 months' confinement, since the period of confinement for a firearm enhancement must run consecutively to all other sentencing provisions. RCW 9.94A.533(3)(e). The State asked the court to sentence Ring to 86 months' confinement. Ring requested an exceptional sentence of 36 months' confinement, which would require the court to reduce the standard range for the assault charges to zero months and run the firearm enhancements concurrently.

The sentencing court found that on the night of the shooting, Ring "believed he was experiencing a threat," but "that belief was incorrect and he was not actually experiencing a threat." It also found that Ring "lacked the capacity to conform his conduct to the requirements of the law due to [his] delusions." Last, it found that Ring's "incorrect belief of a threat was connected to a mental health disorder, which diagnosis includes PSTD."

The court concluded that Ring established by a preponderance of the evidence that, on the night of the shooting, his capacity to appreciate the

2

wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired. Thus, it concluded that an exceptional downward sentence was warranted. It sentenced Ring to nine months for both assault counts running concurrently, followed by two consecutive deadly weapon enhancements of 36 months each, for 81 months total. The court did not believe it had discretion to run the enhancements concurrently to the assault offenses or to reduce them.

## II. ANALYSIS

Ring says the trial court erred by failing to exercise its discretion to consider reducing the firearm enhancements as part of an exceptional downward sentence, since the plain language of RCW 9.94A.533 does not preclude their reduction. He also says that, if the enhancements are mandatory, then they violate the Eighth Amendment to the United States Constitution. We disagree with his arguments.

### A. RCW 9.94A.533

Ring says that RCW 9.94A.533 allowed the sentencing court discretion to reduce the length of the mandatory sentence enhancements and that the sentencing court abused its discretion by not exercising it. We disagree.

We review de novo questions of statutory interpretation. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We interpret a statute by analyzing its plain meaning. Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 435, 395 P.3d 1031 (2017). To do so,

we consider the text of the provision, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. If the meaning of the statute is plain on its face, then we must give effect to that meaning as an expression of legislative intent.

Id. (citing Campbell & Gwinn, 146 Wn.2d at 10–11) (citation omitted). In the context of a criminal case, if we determine that more than one reasonable interpretation exists, we treat the statute as ambiguous, apply the rule of lenity, and interpret it in the defendant's favor. State v. Conover, 183 Wn.2d 706, 711–12, 355 P.3d 1093 (2015).

Under RCW 9.94A.535, a sentencing court has discretion to depart from a standard range sentence by imposing an exceptional sentence upward or downward. A "failure to exercise discretion is itself an abuse of discretion subject to reversal." State v. O'Dell, 183 Wn.2d 680, 697, 358 P.3d 359 (2015). But the applicable statute here, RCW 9.94A.533(3)(e), provides that "[n]otwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements." In State v. Brown, our Supreme Court held that this statutory language deprives a sentencing court of the discretion to impose an exceptional downward sentence regarding deadly weapon enhancements and that "courts may not deviate from the term of confinement required by the deadly weapon enhancement." 139 Wn.2d 20, 29, 983 P.2d 608 (1999) (overruled on other grounds by State v. Houston-Sconiers, 188 Wn.2d 1, 21, 391 P.3d 409 (2017)).

4

In recent decisions such as State v. Mandefero and State v. Brown, this court followed our Supreme Court's decision in Brown and held that, for adults, the statutory language of RCW 9.94A.533(3)(e) deprives sentencing courts of the discretion to impose exceptional sentences regarding firearm enhancements. 14 Wn. App. 2d 825, 830–32, 473 P.3d 1239 (2020); 13 Wn. App. 2d 288, 290–91, 466 P.3d 244 (2020); cf. Houston-Sconiers, 188 Wn.2d at 21 (allowing courts to depart from mandatory firearm enhancements when sentencing juveniles). Ring still encourages us, for various reasons, not to follow our Supreme Court's holding in Brown. We decline this invitation.

    i. *State v. Mohamed* and standard range sentences

First, Ring says that under State v. Mohamed, a standard range sentence includes both the base range and any enhancements, so a court may impose an exceptional sentence on the enhancement as well as the base range. 187 Wn. App. 630, 640, 350 P.3d 671 (2015). In Mohamed, this court reasoned that because a 24-month school zone enhancement under RCW 9.94A.533(6) becomes a part of a defendant's "standard sentence range," the trial court could have waived the enhancement in favor of a drug offender sentencing alternative (DOSA) or a parenting sentencing alternative (PSA). Id. at 636. The court noted that both the DOSA and PSA statutes allow a court to "waive imposition of a sentence within the standard range," and under the reasoning of Gutierrez v. Department of Corrections, 146 Wn. App. 151, 188 P.3d 546 (2008), a school zone enhancement is an addition to a standard range and not a separate sentencing provision. Id. at 638–40.

But RCW 9.94A.533(6) lacks the "[n]otwithstanding any other provision of law, all . . . enhancements under this section are mandatory" language present in subsection (3)(e).  And the Mohamed court specifically contrasted subsections (3)(e) and (4)(e), which provide that firearm and deadly weapon enhancements "shall be served in total confinement," from subsection (6), which does not contain a similar requirement.  187 Wn. App. at 642.  The court thus reasoned that school zone enhancements may be waived under a DOSA or PSA.  Id.  Therefore, the reasoning in Mohamed does not grant a court discretion to impose exceptional sentences with regard to firearm enhancements.[1]

ii.  RCW 9.94A.533 ambiguity

Ring asserts that when a standard range sentence that includes a firearm enhancement is subject to an exceptional sentence under RCW 9.94A.535, an ambiguity arises, because RCW 9.94A.533(3)(e) "does not state the entire *length* of the firearm enhancement is mandatory 'notwithstanding any other provision of law.'"  Thus, he says, the sentencing court could have imposed the firearm

---

[1] Ring also says we should follow the reasoning from Justice Madsen's concurrence in Houston-Sconiers.  There, Justice Madsen wrote that

> An enhancement increases the presumptive or standard sentence; it is not a separate sentence.  State v. Silva-Baltazar, 125 Wn.2d 472, 475, 886 P.2d 138 (1994); see also RCW 9.94A.533(3) (enhancement time "shall be added to the standard sentence range for felony crimes").  There is no reason why a sentencing court, which has the discretion to depart from a standard range sentence, loses that discretion when imposing an exceptional sentence that increases the standard range.  Even with the enhancement, the sentence is still simply a standard range sentence.  The enhancement does not transform that sentence into a mandatory minimum.

188 Wn.2d at 37–38.  But our Supreme Court's decision in Brown binds us.  Brown, 13 Wn. App. 2d at 291 ("[A] decision by the Washington Supreme Court is binding on all lower courts of the state").  And we note that Justice Madsen's concurrence does not address RCW 9.94A.533(3)(e), which states that firearm enhancements are mandatory notwithstanding any other provision of law and shall be served in total confinement.

6

enhancements, run them consecutively to each other and the assaults in establishing the standard range sentence, then determine he is entitled to an exceptional downward sentence and reduce the length of the enhancements. And given this claimed ambiguity, he says we must interpret the statute in his favor under the rule of lenity.

We disagree with Ring's assertion that the statute is ambiguous. RCW 9.94A.533(3) states that the "following additional times"—here, three years—"shall be added to the standard sentence range." Subsection (3)(e) states that, notwithstanding any other law, those enhancements are "mandatory, shall be served in total confinement, and shall run consecutively." Thus, the statute plainly and unambiguously requires that a court sentence a defendant for the full term of a firearm enhancement and that those enhancements be served consecutively. Also, in Brown, our Supreme Court stated that if the language found in RCW 9.94A.533(3)(e) "is to have any substance, it must mean that courts may not deviate from the term of confinement required by the deadly weapon enhancement." 139 Wn.2d at 29. And again, our Supreme Court's holding in Brown binds us here. Brown, 13 Wn. App. 2d at 291.

### iii. *In re Pers. Restraint of Mulholland* and *State v. McFarland*

Ring also suggests we should not follow our Supreme Court's holding in Brown because of its later holdings in In re Pers. Restraint of Mulholland, 161 Wn.2d 322, 166 P.3d 677 (2007) and State v. McFarland, 189 Wn.2d 47, 399 P.3d 1106 (2017).

In Mulholland, our Supreme Court held that a sentencing court may impose concurrent terms for serious violent offenses despite the language of RCW 9.94A.589(1), which requires that convictions for serious violent offenses must be served consecutively. 161 Wn.2d at 331. But in Brown, this court concluded that Mulholland did not apply to a sentence that included firearm enhancements because RCW 9.94A.535 "explicitly allows for a departure from RCW 9.94A.589(1) as an exceptional sentence," but .533(3)(e) applies despite any other provision of law. 13 Wn. App. 2d at 290–91. We similarly conclude that Mulholland does not apply here.

In McFarland, our Supreme Court held that when consecutive sentences for multiple firearm-related convictions lead to a presumptive sentence that is clearly excessive, a sentencing court has discretion to impose an exceptional downward sentence, despite RCW 9.41.040(6)'s pronouncement that sentences for such offenses are consecutive despite any other law. 189 Wn.2d at 54–55. But in Mandefero, this court held that McFarland does not provide a reason for departing from our Supreme Court's ruling in Brown because McFarland addresses firearms convictions and not firearm enhancements. 14 Wn. App. at 832. We similarly conclude that McFarland does not apply here.

iv. *Mandefero*

Last, Ring says we should depart from this court's recent decision in Mandefero, because it followed our Supreme Court's Brown decision in part because of, according to Ring, the "disfavored" canon of legislative acquiescence. There, the court recognized that since our Supreme Court's ruling

8

in <u>Brown</u>, the legislature had not amended RCW 9.94A.533(3)(e)'s mandatory language regarding firearm enhancements with regard to adults. <u>Mandefero</u>, 14 Wn. App. 2d at 831. But the court noted that the legislature had recently amended the statute "to allow courts 'full discretion to depart from mandatory sentencing enhancements and to take the particular circumstances surrounding the defendant's youth into account'—but only for juveniles." <u>Id.</u> (quoting LAWS OF 2020, ch. 141, § 1). Thus, it concluded that as to adults, the legislature had acquiesced to our Supreme Court's holding that firearm enhancements are mandatory and must run consecutively. <u>Id.</u>

Ring says we should disregard this holding because the canon of legislative acquiescence is "disfavored." <u>See, e.g.</u>, <u>Johnson v. Transp. Agency, Santa Clara County, Cal.</u>, 480 U.S. 616, 671, 107 S. Ct. 1442, 94 L. Ed. 2d 615 (1987) (Scalia, J., dissenting) (referring to the canon of legislative acquiescence as "the patently false premise that the correctness of statutory construction is to be measured by what the current Congress desires, rather than by what the law as enacted meant."). But legislative acquiescence remains a valid canon of statutory construction in Washington and is a factor courts may consider. <u>See, e.g.</u>, <u>State v. Sandoval</u>, 8 Wn. App. 2d 267, 273, 438 P.3d 165 (2019) ("'[E]vidence of legislative acquiescence is not conclusive, but is merely one factor to consider'") (alteration in original) (quoting <u>Fast v. Kennewick Pub. Hosp. Dist.</u>, 187 Wn.2d 27, 39, 384 P.3d 232 (2016)); <u>State v. Otton</u>, 185 Wn.2d 673, 685–86, 374 P.3d 1108 (2016) ("'[t]his court presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a

statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision'" (alteration in original) (quoting City of Federal Way v. Koenig, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009))). We decline to disregard the holding of Mandefero on this ground.[2]

B. Eighth Amendment

Ring says it violates the Eighth Amendment to the United States Constitution to impose mandatory firearm enhancements on persons whose culpability is reduced because of mental illness. The State disagrees. We conclude that Ring has shown no constitutional violation.

The Eighth Amendment prohibits cruel and unusual punishment. State v. Schmeling, 191 Wn. App. 795, 798, 365 P.3d 202 (2015). "There are two types of Eighth Amendment analysis: (1) determining whether a sentence is disproportionate to the particular crime, and (2) using categorical rules to define constitutional standards for certain classes of crimes or offenders." Id.[3] Although

---

[2] For the first time in his reply brief, Ring asserts that Houston-Sconiers no longer applies just to juveniles under the rule of In re Pers. Restraint of Monschke, 197 Wn.2d 305, 326, 482 P.3d 276 (2021). We need not address arguments raised for the first time in a reply brief because the opposing party has no meaningful opportunity to respond. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Even so, Monschke does not suggest that a court may impose an exceptional downward sentence with regard to firearm enhancements for those whose culpability is reduced because of their mental illness.

[3] Article I, section 14 of the Washington State Constitution also prohibits cruel punishment. Our Supreme Court has held that the state constitutional provision is often more protective than the Eighth Amendment. State v. Bassett, 192 Wn.2d 67, 78, 428 P.3d 343 (2018). Because Ring relies only on the Eighth Amendment, we do not analyze his claim under article I, section 14.

Ring does not suggest which standard we should apply, it appears his claim most resembles the categorical bar analysis.[4]

The categorical bar analysis involves two steps. First, the "court considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing practice at issue.'" Id. at 799 (internal quotation marks omitted) (quoting Graham v. Florida, 560 U.S. 48, 61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)). The United States Supreme Court has stated that the burden is on the offender to show that a national consensus exists. State v. Moretti, 193 Wn.2d 809, 821, 446 P.3d 609 (2019). Second, the court exercises its own independent judgment based on "'the standards elaborated by controlling precedents and by the [c]ourt's own understanding and interpretation of the [cruel punishment provision]'s text, history . . . and purpose.'" State v. Bassett, 192 Wn.2d 67, 83, 428 P.3d 343 (2018) (alterations in original) (quoting Graham, 560 U.S. at 61, 130 S. Ct. 2011).

Ring provides no information about whether other states prohibit mandatory firearm enhancements for persons with mental illness. Instead, he asserts that courts already consider mental illness in assessing an individual's

---

[4] In Schmeling, the court noted that the categorical bar analysis had been applied only in cases involving the death penalty or juvenile offenders and declined to apply it to the defendant's claim regarding punishment of adult drug offenders. 191 Wn. App. at 800–01. But it noted that even if the standard applies to sentences for adult drug offenders, it would not apply in those circumstances because the defendant had not shown a national consensus against felony sentences for residue controlled substance possession. Id. at 800 n.4. As addressed below, even if the categorical bar analysis applies to firearm enhancements for adults, it does not apply here because Ring has shown no national consensus against imposing firearm enhancements on persons whose culpability is reduced by mental illness.

criminal culpability. Ring cites Houston-Sconiers and Atkins v. Virginia, 536 U.S. 304, 321, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), to support this assertion. But these cases are distinguishable. Our Supreme Court's holding in Houston-Sconiers applies only to juveniles, not to adults with mental illness. Brown, 13 Wn. App. 2d at 291. And in Atkins, the United States Supreme Court ruled that execution of persons with intellectual and cognitive disabilities violates the Eighth Amendment. 536 U.S. at 321. The Court considered trends in state legislative bodies to reject the death penalty for persons with intellectual and cognitive disabilities and concluded that the justifications for the punishment were not served by those offenders because of their diminished culpability. Id. at 317–21. But it does not follow from Atkins that it violates the Eighth Amendment to impose firearm enhancements on those suffering from *any* mental illness.

Because Ring has shown no national consensus against such punishment, his Eighth Amendment claim fails.

We affirm.

_____
Chun, J.

WE CONCUR:

_____       _____
Smith, J.                        Dwyer, J.

12