FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE FEB 1 4 2019

for CHIEF JUSTICE

This opinion was filed for record

at 8:00am on Feb 14, 2019

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 95992-7 |
| Petitioner, | |
| v. | EN BANC |
| JAMES AUSTIN YANCEY, | |
| Respondent. | Filed __FEB 1 4 2019__ |

GORDON McCLOUD, J.—James Austin Yancey, a military veteran with no prior criminal history, was caught selling drugs within a school zone. Yancey pleaded guilty and asked the trial court for a lenient sentence—either a first-time offender waiver or a residential-based drug offender sentencing alternative (DOSA). RCW 9.94A.660. The State objected to the residential-based DOSA because the relevant DOSA statute allows only a *prison*-based—not a *residential*-based—DOSA for defendants with a standard range like the one Yancey had. RCW 9.94A.660(3). Over the State's objection, the trial court imposed a residential-based DOSA, and the Court of Appeals affirmed.

We reverse and remand for a new sentencing hearing. Based on the plain language of the DOSA statute, the trial court lacked discretion to sentence Yancey to a residential-based DOSA.

FACTUAL AND PROCEDURAL BACKGROUND

Yancey, a military veteran suffering from posttraumatic stress disorder, twice sold his prescription Suboxone strips to a person who turned out to be a police informant. Clerk's Papers (CP) at 1-3, 26. Suboxone contains buprenorphine, a schedule III controlled substance. CP at 4-5. Both sales took place within 1,000 feet of a school bus stop. CP at 4-5, 74.

The State charged Yancey with two counts of delivering the drug and added a sentence enhancement to each count for delivering within 1,000 feet of a school bus stop. CP at 4-5. Prior to these charges, Yancey had no criminal record.[1] CP at 66. Given his offender score and the seriousness level of the crimes, Yancey faced a standard sentence range of 12 to 20 months, plus a 24-month sentence enhancement, for each count. *See id.* Accordingly, his total standard range was 36 to 44 months per count. *Id.*

The State initially offered a plea deal in which it would drop one count and recommend a prison-based DOSA for the other. CP at 41. Under the proposed deal,

---

[1] He was caught selling cocaine prior to his military service, but the State dropped the charge after Yancey himself worked as a police informant. CP at 39, 42-48.

2

Yancey would have served 20 months in prison and an additional 20 months in community custody. *Id.* Yancey twice counteroffered to plead guilty if the State removed the school-zone enhancements so that he could serve a residential chemical dependency treatment-based (residential-based), rather than a prison-based, DOSA. CP at 26-27. The State refused both counteroffers. *Id.*

Yancey ultimately pleaded guilty to both counts and the corresponding enhancements. CP at 9-19, 65. Yancey sought either a first-time offender waiver, CP at 27, or a residential-based DOSA, CP at 34. The State opposed the first-time offender waiver. CP at 37-40. The State also opposed the residential-based DOSA, arguing that the DOSA statute bars this alternative sentence when the midpoint of an offender's standard range exceeds 24 months—and Yancey's midpoint was 40 months. CP at 61-63 (citing RCW 9.94A.660(3)). Nevertheless, the trial court sentenced Yancey to a residential-based DOSA. CP at 69.[2]

The State appealed, again arguing that the trial court lacked statutory discretion to impose a residential-based DOSA. CP at 78. In a split decision, the Court of Appeals held that the trial court may waive sentence enhancements to get to a standard sentence range that is low enough to accommodate the residential-

---

[2] The State—the party that filed the notice of appeal and the petition for review— failed to provide the sentencing transcript as part of the record on review. It is therefore impossible to know the trial court's reasoning or goals in sentencing Yancey to a residential-based DOSA.

based DOSA's sentence-length prerequisites. *State v. Yancey*, 3 Wn. App. 2d 735, 740, 418 P.3d 157 (2018) (interpreting *State v. Mohamed*, 187 Wn. App. 630, 350 P.3d 671 (2015)). In Yancey's case, waiving a school-zone enhancement would reduce the midpoint of his standard range from 40 months to 16 months, making a residential-based DOSA possible. *Id.* at 739-40. Lacking a sentencing transcript, the Court of Appeals ultimately remanded "to the sentencing court to either confirm or exercise waiver of the enhancements or to resentence Yancey if the court did not intend to waive the enhancements." *Id.* at 741.

The dissent argued that courts may not waive the sentence enhancements *and* impose a DOSA. *Id.* at 742-47 (Korsmo, J., dissenting). The dissent would have "remanded for the trial court to consider either a prison-based DOSA or a standard range sentence." *Id.* at 747.

We granted review, *State v. Yancey*, 191 Wn.2d 1012 (2018), and now reverse.

ANALYSIS

To resolve this case, we must interpret RCW 9.94A.660.[3] We review the meaning of a statute, a question of law, de novo. *State v. Wooten*, 178 Wn.2d 890,

---

[3] The trial court must sentence under the statutes in effect at the time of the crimes. Yancey committed his crimes in April 2015. CP at 4-5. The current statutes, in relevant part, remain the same as the former statutes that were in effect at the time of Yancey's crimes.

895, 312 P.3d 41 (2013) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)).

In interpreting a statute, we strive to "ascertain and carry out the legislature's intent." *State v. Bigsby*, 189 Wn.2d 210, 216, 399 P.3d 540 (2017) (citing *Campbell & Gwinn, LLC*, 146 Wn.2d at 9). If the legislature's intent is clear from the statute's plain meaning, then we give effect to that plain meaning. *Id.* "Plain meaning is 'discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *State v. James-Buhl*, 190 Wn.2d 470, 474, 415 P.3d 234 (2018) (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)). "When ascertaining the plain meaning of the statute, we 'must not add words where the legislature has chosen not to include them,' and we must 'construe statutes such that all of the language is given effect.'" *Id.* (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

Generally, the trial court "shall impose a sentence . . . within the standard sentence range." RCW 9.94A.505(2)(a)(i). But the court may deviate from the standard range in statutorily specified circumstances. *E.g.*, RCW 9.94A.535 (exceptional sentences), .650 (first-time offender waiver), .660 (DOSA). The DOSA program allows the trial court "to give eligible nonviolent drug offenders a reduced sentence, treatment, and increased supervision in an attempt to help them recover

5

from their addictions." *State v. Grayson*, 154 Wn.2d 333, 337, 111 P.3d 1183 (2005)

(citing RCW 9.94A.660). The trial court may impose a prison-based DOSA or, in

some circumstances, a residential-based DOSA. RCW 9.94A.660(3).

In this case, the parties dispute whether this is one of those circumstances that

allows for a residential-based DOSA. This dispute boils down to the correct

interpretation of the following statute, specifically the emphasized portions:

> If the sentencing court determines that the offender is eligible for an
> alternative sentence under this section and that the alternative sentence
> is appropriate, *the court shall waive imposition of a sentence within the
> standard sentence range* and impose a sentence consisting of either a
> prison-based alternative under RCW 9.94A.662 or a residential
> chemical dependency treatment-based alternative under RCW
> 9.94A.664. *The residential chemical dependency treatment-based
> alternative is only available if the midpoint of the standard range is
> twenty-four months or less.*

*Id.* (emphasis added).

Yancey argues that the first emphasized portion grants a trial court broad

discretion to alter a standard sentence range. Resp't's Suppl. Br. at 5-8. Based on

Yancey's reading, the trial court appropriately "waive[d] imposition of a sentence

within the standard sentence range" of 36 to 44 months—a range that, based on the

statute's last sentence, would have barred the trial court from imposing a residential-

based DOSA—and instead imposed a different sentence with a midpoint of 24

months or less. From this argument it follows that the trial court may choose any

6

midpoint it wants in order to accommodate the court's personal preference for or against a residential-based DOSA.

The State argues that the trial court's discretion to waive the standard range is constrained by the remainder of the statute. Suppl. Br. of Pet'r at 7-8, 15-16. Based on the State's reading, the trial court certainly can waive imposition of a sentence within the standard range. But the court cannot then impose any sentence that it sees fit. The court may impose only a prison-based or a residential-based DOSA—and only a prison-based DOSA if the midpoint of the standard sentence range exceeds 24 months. RCW 9.94A.660(3).

The State is correct. Immediately after the statute instructs the court to "waive imposition of a sentence within the standard sentence range," it expressly tells the court what it is to do next: "impose a sentence consisting of either a prison-based alternative under RCW 9.94A.662 or a residential chemical dependency treatment-based alternative under RCW 9.94A.664." RCW 9.94A.660(3). And those cross-referenced statutes provide detailed instructions on how to calculate prison-based and residential-based DOSAs. *See* RCW 9.94A.662, .664. Nowhere does the statute permit the court to, for instance, "impose a sentence based on the underlying count, absent any enhancements." We will not "'add words where the legislature has chosen not to include them.'" *James-Buhl*, 190 Wn.2d at 474 (quoting *Cananwill*, 150 Wn.2d at 682). We will, however, "'construe statutes such that all of the

language is given effect.'" *Id.* (quoting *Cananwill*, 150 Wn.2d at 682). And this statute explicitly bars the court from imposing a residential-based DOSA if the midpoint of the standard sentence range exceeds 24 months.

Yancey claims that *Mohamed* supports his argument. In that case, a jury found Mohamed guilty of four counts of delivery of cocaine, three of which included enhancements. *Mohamed*, 187 Wn. App. at 634-35. Based on the convictions, Mohamed faced a standard sentence range of 20 to 60 months for each conviction of cocaine delivery, plus three 24-month sentence enhancements. *Id.* at 635. Accordingly, Mohamed's total standard range for each enhanced conviction was 44 to 84 months, with a midpoint of 64 months. *See id.* at 645.[4] Mohamed asked the trial court to impose a DOSA. *Id.* at 635. But the trial court believed the law required Mohamed to serve the full 72 months of enhancements in prison, even if it imposed a DOSA sentence. *Id.* at 635-36. This erroneous belief led the trial court to reject Mohamed's DOSA request. *Id.* at 636.

The Court of Appeals in *Mohamed* explained that the trial court, under the DOSA statute, may "waive imposition of a sentence within the standard sentence

---

[4] The court in *Mohamed* did not express an opinion as to whether the three enhancements had to run consecutively to each other or just consecutively to the underlying conviction. 187 Wn. App. at 645. We subsequently resolved that issue, holding that although enhancements must run consecutively to their underlying conviction, they need not run consecutively across counts. *State v. Conover*, 183 Wn.2d 706, 717-19, 355 P.3d 1093 (2015).

range." *Id.* at 638. And the standard sentence range includes "the base sentence range plus enhancement of such range." *Id.* at 641; *see also State v. Silva-Baltazar*, 125 Wn.2d 472, 475, 886 P.2d 138 (1994) ("An enhancement increases the presumptive or standard sentence."); *In re Postsentencing Review of Gutierrez*, 146 Wn. App. 151, 155, 188 P.3d 546 (2008) ("A sentence range increased by an enhancement is still a standard range sentence."). It follows, the *Mohamed* court concluded, that "a sentencing court may waive the enhancements as part of the standard sentence range under a DOSA . . . ." 187 Wn. App. at 641. The court remanded to the trial court for a new sentencing hearing, where "the court will have the opportunity to consider the full range of sentencing options available to it." *Id.* at 647.

The *Mohamed* court broadly framed the issue as "whether the trial court had the authority to waive the 24-month school zone enhancements." *Id.* at 636 (citing RCW 9.94A.533(6)). This framing led the Court of Appeals in this case to interpret *Mohamed* as precedent for the notion that a trial court may waive a school-zone enhancement, reducing the midpoint enough to accommodate a residential-based DOSA. *Yancey*, 3 Wn. App. 2d at 739-40.

This interpretation is incorrect. The *Mohamed* court simply held that the trial court may waive the standard sentence range—a range that includes any enhancements—and impose a DOSA. 187 Wn. App. at 638-47. For example, the

trial court in Yancey's case had discretion to waive the standard range of 36 to 44 months, a range that included the 24-month enhancement, and impose a prison-based DOSA. A prison-based DOSA would have sent Yancey to prison for 20 months followed by 20 months of community custody. *See* RCW 9.94A.662(1). He did not have to serve the full 24-month enhancement in prison, contrary to what the trial court in *Mohamed* believed. Instead, as the Court of Appeals in *Mohamed* noted, that enhancement was subsumed into Yancey's standard range, which in turn may be waived and replaced by a prison-based DOSA. Had the trial court in this case imposed a prison-based DOSA, Yancey would have served fewer months in prison (20 months) than the sentence enhancement itself called for (24 months). This is what the *Mohamed* court meant when it discussed "waiving enhancements." 187 Wn. App. at 645.

In sum, we hold that the statute is clear: the trial court may not "waive" sentence enhancements or portions of the base sentence to get to a range that is low enough to accommodate the residential-based DOSA's sentence-length prerequisites.[5] We therefore reverse the Court of Appeals. We do not know the trial court's reasons for imposing a residential-based DOSA as opposed to a prison-based

---

[5] The State claims that Yancey's reading of the statute would permit the trial court to impose an inappropriate hybrid sentence consisting of an exceptional sentence and a DOSA. In dissent, Judge Korsmo made the same argument. *Yancey*, 3 Wn. App. 2d at 742-47 (Korsmo, J., dissenting). But the trial court in this case did not impose an exceptional sentence, so we do not address that issue.

10

DOSA or a standard range sentence. Nor do we know its reasoning concerning Yancey's request for a first-time offender waiver. We therefore remand for a full resentencing.

## CONCLUSION

The legislature's intent is clear from the plain meaning of the DOSA statute. The trial court deviated from that plain meaning by imposing a residential-based DOSA. Accordingly, we reverse the Court of Appeals and remand for a full, new sentencing hearing.

*State v. Yancey (James Austin)*, No. 95992-7

_____
González, C.J.

WE CONCUR:

_____
Fairhurst, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Wiggins, J.

_____
Madsen, J.

_____
González, J.

_____
Owens, J.

_____
Yu, J.

12