IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79971-1-I |
| | ) | (Consolidated with Nos. |
| Respondent, | ) | 79972-0-I, 79973-8-I, 79975-4-I, |
| | ) | 79974-6-I, 79976-2-I) |
| v. | ) | |
| | ) | |
| CHERRINGTON, ALECIA MARIE, | ) | UNPUBLISHED OPINION |
| DOB: 07/12/1981, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Judges have a duty to conduct themselves with respect for those they serve, including the litigants who come before them. The trial court denied Alecia Cherrington's request for a prison-based drug offender sentencing alternative (DOSA) after addressing her using epithets and slurs. Epithets and slurs are manifestations of bias or prejudice. CJC 2.3 cmt. 2. We reverse and remand for resentencing before a different judge.

## FACTS

The State charged Cherrington with 13 felonies under six cause numbers. The informations alleged Cherrington committed residential burglary, identity theft, possession of stolen property, forgery, unlawful production of payment instruments, and possession of a controlled substance between November 2015 and August 2018. Cherrington pleaded guilty as charged to all counts.

Citations and pin cites are based on the Westlaw online version of the cited material.

On April 25, 2019, Cherrington appeared before the court for sentencing. The State requested a concurrent high-end standard-range sentence of 84 months of confinement. Cherrington requested a prison-based DOSA to address her long history of addiction.

Three witnesses addressed the court on Cherrington's behalf. Two drug and alcohol counselors described Cherrington's successful participation in the King County Drug Court program[1] related to a separate felony charge.[2] They told the court that Cherrington held herself accountable throughout the treatment process and that none of her urinalysis tests (UAs) showed the use of drugs or alcohol. One of the counselors explained:

> [S]he had clean UAs throughout. It was pretty clear to me early in working with [Cherrington] in our group, she was pretty open about all her past behavior was directly tied to her use of methamphetamines and other substances.

He said that Cherrington "kind of became a leader in group. People really rallied around her. She really supported other people." A case manager from a community health program told the court that she had "been working with [Cherrington] for several months, and I've really seen a tremendous improvement. Once she did get clean and sober, she really did show remorse, and she followed up with all of her appointments."

---

[1] Drug court is a "[t]herapeutic court" where a judge has statutory authority to work "in ways that depart from traditional judicial processes to allow defendants . . . the opportunity to obtain treatment services." RCW 2.30.010(4)(a), .030(1).

[2] It appears from the record that Cherrington participated in the King County Drug Court program in October 2018. After six months, the court discharged Cherrington from the program and dismissed her felony charge in anticipation of her long prison sentence in this case.

A Department of Corrections (DOC) risk assessment report recommended "with reservation" that the court grant Cherrington's request for a DOSA. While the report noted Cherrington's lengthy criminal history and poor past performance under supervision, it concluded, "[T]he progress she made during her most recent term of supervision, coupled with her recent participation in a Drug Court Program, could indicate possible success in a DOSA."

Cherrington's defense attorney also addressed the court in support of her request for a DOSA. He highlighted the DOC recommendation in favor of granting a DOSA. Counsel explained that the DOC evaluator

> gave every reason why you shouldn't, every reason under the sun, why you should not grant [the DOSA]. And then she did [recommend to grant it]. And I had to figure out how she did that, because I know her, and she's not a soft touch. She did it because of [Cherrington's] age,[3] and she did it because of what [Cherrington's] doing now.

The court responded:

> THE COURT:     She's past the sweet age, 27 to 33.
> [DEFENSE COUNSEL]:     Oh?
> THE COURT:     That's the age that you can get them. [The recommendation is] not based on age.

Counsel then argued that Cherrington needs the prison-based DOSA "[b]ecause of the structure." He pointed out that the DOC evaluator agreed that Cherrington "needs the structure" of a DOSA. Counsel said, "I understand prison structure, but when she's released, how much time after she's released and to what end?" The court responded that "[i]f she wants to use, she will use. If she doesn't want to use, she won't use. This is not rocket science."

---

[3] Cherrington was 37 years old at the time of sentencing.

Cherrington then addressed the court on her own behalf. She argued that she needs the therapeutic setting of a DOSA to learn how to maintain her sobriety. She explained that she managed to get "clean and sober" on her own but that she had "one slipup, and I'm scared. I don't want to go back out and use." Cherrington told the court that she used alcohol two weeks earlier because "I know that I'm going to prison. I know that I'm losing everything that I gained, but then that could have just made me lose a lot more, and I read all the victim statements, and it just was a little bit much for me." Then these exchanges occurred:

> THE DEFENDANT: . . . And so I know that I need more help than —
> THE COURT: What help do you need?
> THE DEFENDANT: Like, relapse — relapse warning signs. I'm, like, "Who is this" —
> THE COURT: What, you need, like, a little red light to go off "EEE, EEE, EEE" (indicating)? Something like that?
> . . . .
> . . . What do you need?
> THE DEFENDANT: I need to identify my problems or why I tick the way I do.
> THE COURT: You already know what they are.
> THE DEFENDANT: If I did, then I wouldn't be where I'm at right now.
> THE COURT: You're exactly where you are right now because you know what they are.
> THE DEFENDANT: Okay.
> THE COURT: You don't believe me?
> THE DEFENDANT: I didn't say I didn't believe you. I don't know.
> THE COURT: Yes, you do. And you'd think that somebody who is as long in the tooth as you are —
> THE DEFENDANT: What does that mean?
> THE COURT: Old.
> . . . .
> THE DEFENDANT: Oh.
> THE COURT: — that maybe you would have some honesty around it. It would seem to me, when you're looking at the

4

guy who is going to send you away for 84 months, and you're making a pitch to not get the 84 months, that maybe you would come in with a little bit of honesty.

THE DEFENDANT:     Honesty about what, Your Honor?

THE COURT:     About you and your addiction.

THE DEFENDANT:     My addiction is horrendous.

THE COURT:     You just told me, "I don't know why I'm using. I don't know why I relapse," and I call bullshit on that.

. . . .

. . . Don't give me any BS[4] about you don't know why. You spent a fair amount of time talking with yourself about it.

THE DEFENDANT:     I'm not trying to give you any BS.

THE COURT:     You want to blow smoke up my robe, go somewhere else. Thirty-seven years you've been running from yourself and your issues. You know exactly why you use. You just don't want to deal with them in a forthright manner.

. . . .

THE DEFENDANT:     I know that I'm an addict, and I know I have a problem, and I know that I need help.

. . . .

THE COURT:     What's your problem?

THE DEFENDANT:     I know I'm an addict. I know I have a problem.

THE COURT:     No shit. That's it? That's all you're giving me? "I know I'm an addict. I know I have a problem. And I want help with my problem."

THE DEFENDANT:     I want to be a better person. I want to be — I don't think it's the end of the road for me.

THE COURT:     What's that mean, "be a better person"? I never really understood what that means.

. . . .

THE DEFENDANT:     To be able to function normally in society — be able to go —

THE COURT:     What does "normal" mean?

THE DEFENDANT:     I don't know.

. . . .

THE COURT:     I don't know what normal means; do you? You're striving for something you don't understand. How about just accepting yourself as an addict?

THE DEFENDANT:     I do.

THE COURT:     You don't. I can see the shame written all over your face. Every time you say the word "addict," you look

---

4 Bullshit.

down.  I don't know — what's so bad about being an addict? What's so bad about that?

. . . .

THE DEFENDANT:     There's nothing.

THE COURT:     Then why are you so ashamed about being an addict?  Why do you shame yourself every day for being an addict?

THE DEFENDANT:     I don't know.

THE COURT:     Do they talk about these things at any of the treatment programs you've been in?  Any of the DOSAs?  Any of the inpatient?  Any of the outpatient crap that you've been in? . . .

THE DEFENDANT:     No.

THE COURT:     No?  Weird, huh?  You think addiction is a disease or a moral failing?

THE DEFENDANT:     A disease.

. . . .

THE COURT:     . . . If you had cancer, would you be walking around the streets of Seattle going, "Oh, my God, I've got cancer. I'm such a shitty person.  I don't deserve to be around.  I don't deserve to live"?  Would you?

THE DEFENDANT:     No.

. . . .

THE COURT:     Well, maybe you need to ask yourself that. That's part of coming to terms with being an addict.  Maybe forgiving yourself for nothing that you had anything to do with. Maybe when you get up in the morning, instead of the first thought going through your head, "Oh, I'm an addict, I'm such a shitty person," maybe the first thought is, "Hey, I wonder what today is going to bring." . . .

How is that working out for you, these 37 years waking up every morning thinking that you're a piece of shit because you're an addict?

THE DEFENDANT:     Not fun.

. . . .

THE COURT:     . . . This is not rocket science.  If you want to stop using, you have to figure out why you're using.  I want to throw my pen at you right now to see if that gets you right through the head. . . .

. . . .

So let me sum this all down to one thing.  Ultimately, what is the issue?  It's one word.  It's four letters.  What do you think it is? It begins with "F."  Anything?  Anything at all?

THE DEFENDANT:     No.

THE COURT:     Fear. . . .

. . . Fear only has power when nobody knows about it.  And when everybody else knows, there is no longer fear, and fear is

6

based on the unknown.  You don't know exactly what you're going to find, and you're afraid to look.  You want me to tell you what you're going to find?

THE DEFENDANT:    Yes.

THE COURT:    You individually, specific to you?  Well, how the hell would I know that, but I'll tell you anyways.  When did you start using all mood-and-mind-altering substances?  Marijuana?  Alcohol?  Mom's little blue pills?  Dad's little yellow ones over here?

THE DEFENDANT:    At age 11.

THE COURT:    Eleven?  I would think around eight myself, but I'll take eleven.

. . . .

. . . Here's what you're going to find when you get down there to that place:  You're going to find yourself a scared little girl who doesn't know shit about anything, who is scared, who is alone, who is lost.  She's not responsible for any of this, she didn't ask for any of this, and she doesn't know what to do.  That's what you're going to find.  And what the hell is so scary about that?

And here's why being an addict is such a gift that's been given to you that normal people will never understand.  When you're down there and you grab this little girl and you embrace her and tell her that you love her, you have the ability to bring her forward to the present. And as you're doing that, and as you're walking with her and teaching her, you're teaching her all the things that you want her to be.  You're instilling in her all the value and all the integrity and all the selflessness that you want her to have, so that by the time she's here, you've created yourself a new human being through recovery.  It's a miracle that normal people don't get the opportunity to do; only addicts have this ability.  Most people don't have to examine themselves and examine their life.

. . . .

. . . What's so hard about this?  What's so hard about this conversation?

THE DEFENDANT:    Fear.

THE COURT:    Fear.  Fear of what?  Nothing, man.  I know; right?  You think about it, it's, like, fear of self, and then you're, like (indicating), nothing.  You don't need treatment.  You just need to be honest. . . .

. . . .

. . . I would give up figuring out what the future brings.  That's an exercise in futility.  I would live for today, because tomorrow's gone, and yesterday's only a dream.  And one of my most favorite sayings is this . . . [:] a woman, like that of a tree, is best measured when laid down.  In order to measure a tree, you cut it down, and you run the tape along it to get an accurate measurement.  A woman, or a human being, is best measured

7

when they're laid down when they have taken their last breath, because you don't know the ripple in the pond from the stone that you have thrown, what effect it's going to have, until your last breath. You don't know what actions are going to impact people in the future, or even in the past, until it's all said and done.

. . . .

My heart breaks for you and your inability to love yourself and your reluctance to be honest. I think you have a smidgen of it, because you have acknowledged some of the issues that I have talked about. I think I have ruined your using for the next 20 years, because now when you use, you're going to be thinking, "Well, hell, I'm only using because I'm afraid." That has a way to knot you and start pissing you off because then you don't want to be subject to something else.

After the long exchange,[5] the court denied Cherrington's request for a DOSA because "[t]here's just too many crimes and too many cases to ignore" and "I believe if you take some of these things from today, you don't need a therapeutic setting. You just need to believe in you. You just need to forgive yourself, and you'll be just fine." The court sentenced Cherrington to 72 months in prison and 12 months of community custody. Cherrington appeals.

ANALYSIS

A DOSA is a statutory deviation from the standard sentencing range that allows a trial court to give eligible offenders a reduced sentence with treatment and increased supervision to assist in substance abuse recovery. State v. Yancey, 193 Wn.2d 26, 30-31, 434 P.3d 518 (2019); see RCW 9.94A.660. A trial court has broad discretion in determining whether to grant a DOSA. State v. Grayson, 154 Wn.2d 333, 335, 342, 111 P.3d 1183 (2005). The decision whether to grant a DOSA is generally not reviewable unless the sentencing court

---

[5] The transcript of this exchange spans 21 pages.

refused to exercise discretion or relied on an impermissible basis for its decision. State v. Lemke, 7 Wn. App. 2d 23, 27, 434 P.3d 551 (2018). "While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." Grayson, 154 Wn.2d at 342. A trial court's failure to consider a sentencing alternative meaningfully is reversible error. Lemke, 7 Wn. App. 2d at 27.

> Judges have a duty to conduct themselves with respect for those they serve, including the litigants who come before them. "A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute."

Lemke, 7 Wn. App. 2d at 27 (quoting CJC 2.3 cmt. 1).

In Lemke, we addressed similar conduct from the same judge that sentenced Cherrington here. Lemke participated in the Snohomish County Adult Drug Treatment Court program. Lemke, 7 Wn. App. 2d at 25. During a review hearing to address lack of compliance with the program, Lemke reported that he had a sore shoulder from being on work crew. Lemke, 7 Wn. App. 2d at 25. The judge replied that Lemke could " 'stop with the shoulder bullshit now' " and " 'I think you're a fucking addict and maybe you need treatment.' " Lemke, 7 Wn. App. 2d at 25. Before terminating Lemke from the drug court program, the court noted that the charges against Lemke were two counts of possession of a controlled substance and shoplifting. Lemke, 7 Wn. App. 2d at 26. The judge commented, " 'So not only is he an addict, he's also a liar and thief.' " Lemke, 7 Wn. App. 2d at 26. At sentencing, the judge denied Lemke's request for a DOSA, stating, " 'You, sir, are just a criminal, that's all you are, you're just a

criminal. Do you have issues? Yep, you do. Are you going to deal with them? No, you're not. . . . You, the odds say, are going to die in prison.' " Lemke, 7 Wn. App. 2d at 26-27.[6]

We made clear in Lemke that "[n]o judge wielding the power of the State in any courtroom has any good reason to call a litigant a 'fucking addict' and 'just a criminal.' " Lemke, 7 Wn. App. 2d at 27-28. Here, the words leveled at Cherrington may be different from those cast at Lemke, but the import is the same. And the judge was not addressing Cherrington in the context of drug court, where the court has discretion to work in ways that depart from traditional judicial processes. See RCW 2.30.010(4)(a), .030(1). Due process requires a fair hearing in a fair court. Lemke, 7 Wn. App. 2d at 28 (quoting In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955)). A fair hearing requires that the judge not only be impartial but also that the judge appear to be impartial. State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). Epithets and slurs are manifestations of bias or prejudice. Lemke, 7 Wn. App. 2d at 27 (citing CJC 2.3 cmt. 2).

> Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or

---

[6] Alteration in original.

prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

CJC 2.3 cmt. 2.

The State argues that Cherrington takes the court's remarks out of context and that when viewed as a whole, "they show great sympathy for her and confidence in her capacity for self-improvement." It argues that "[i]t would be sad if this court were to announce a rule that discouraged judges from engaging in serious conversations with convicted persons about their addictions and the possibility of change." But this assumes that the only means to a serious conversation with a litigant about their addiction is with epithets and slurs. We reject that premise. And while the judge may have intended his remarks on the whole to encourage Cherrington "to believe in herself and not be ashamed of things that she could not control," his harsh and inappropriate language defeated the purpose.[7]

---

[7] We note that this court addressed similar behavior by the same judge in State v. Walker, No. 77707-6-I (Wash. Ct. App. July 29, 2019) (unpublished), http://www.courts. wa.gov/opinions/pdf/777076.pdf. "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions." GR 14.1(c). In Walker, the judge's interaction with the defendant occurred during a hearing accepting her into drug court. Walker, No. 77707-6-I, slip op. at 6. The conduct here exceeds that displayed in Walker and did not occur in the context of a preliminary hearing in drug court. See Walker, No. 77707-6-I, slip op. at 7-11.

We reverse and remand for sentencing before a different judge.[8]

_____
Bremmer, J

WE CONCUR:

_____          _____
Smith, J.                        Mann, C.J.

---

[8] Cherrington also argues that the costs of community custody imposed at sentencing "are statutorily prohibited and must be stricken" because she is indigent.  Because we remand for sentencing, we do not reach that issue.