**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58738-6-II |
| Respondent, | |
| v. | |
| JOHNNY CASSANOVA TWITTY, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Johnny Cassanova Twitty was resentenced and appeals his sentence for attempted murder in the first degree and unlawful possession of a firearm. First, he argues the resentencing court erred by including a juvenile assault conviction in his offender score calculation. Second, he argues the resentencing court erred in not considering evidence of his rehabilitation. Third, he argues the resentencing court erred in relying on statements that suggested his offense was gang related. Fourth, he argues the crime victim penalty assessment (VPA) and DNA collection fees should be stricken. In a statement of additional grounds for review, Twitty argues the trial court abused its discretion in denying his request to remove trial counsel and in denying trial counsel's request to withdraw. He also argues he received ineffective assistance of trial counsel. Finding no error, we affirm Twitty's sentence, but remand with instructions to strike the VPA and DNA collection fees.

FACTS

I.     FACTUAL BACKGROUND AND PRETRIAL HEARING

Twitty and Larry Mahone got into a conflict outside of a bar during which Twitty shot Mahone multiple times. Twitty was charged with attempted murder in the first degree, unlawful possession of a firearm, and assault in the first degree. Twitty argued self-defense and claimed the conflict was somehow gang related. Mahone testified Twitty shot him unprovoked.

The court granted the State's motions to exclude evidence that Mahone was a gang member, that he had the nickname "Little Lakewood" or "C-Money," and a photograph purportedly of Mahone that also showed persons displaying gang signs. Clerk's Papers (CP) at 181.

II.     TRIAL

At trial, Twitty testified and suggested multiple times that the conflict between him and Mahone was somehow gang related in nature.

> [TWITTY]: The second time Mahone has something else to say to me, which was a threat, another verbal threat . . .
> . . . .
> [THE STATE]: What was that second verbal threat?
> [TWITTY]: Do you really want me to say?
> [THE STATE]: Sure.
> [TWITTY]: "You better watch out, Cuz." You know what that refers to.
> [THE STATE]: No, tell me.
> . . . .
> [TWITTY]: It's a gang-related threat. That's what it is.
> . . . .
> [THE STATE]: You understood that to be a gang related threat?
> [TWITTY]: I know it is, yes.
> [THE STATE]: How?
> [TWITTY]: Because I know that it's a gang-related threat.
> [THE STATE]: Was—that had to then make your fear much greater than it was even before. Right, Mr. Twitty?
> [TWITTY]: It made my fear much greater, because I didn't know what they were referencing to Tacoma/Seattle problem, or if it was a Tacoma/Lakewood

2

gang-related problem. I didn't know what to reference it to. But I knew it was a problem.

. . . .

[THE STATE]: Did Larry Mahone say anything else to you at that time?

[TWITTY]: Um, I think he said that there was going [to] be a shoot-out.

[THE STATE]: Did he tell you some Hilltop Crips were out to kill him and he needed your help to defend himself?

[TWITTY]: No, he didn't say that. But I know that he said that there was going to be a shoot-out with the Hilltop Crips. I remember that.

. . . .

[THE STATE]: So under oath on September 16, you said Mr. Mahone asked you to help him?

[TWITTY]: I don't recall. I don't recall that because what I do recall is him asking us about the Hilltop Crips, if we had a gun and there was going to be a shoot-out, and I am telling him that I don't need no gun, I'll fight, and it wasn't referring to no Hilltop Crips or whatever the situation he was in. It didn't have anything to do with Mr. Mahone's situation. I don't have anything to do with them.

. . . .

[THE STATE]: So when he said, "Can you help protect me?" You said, "We are not with all that, we don't need guns." Right?

[TWITTY]: And that I thought it was intimidation tactic for these gang members, is what I thought.

6 Rep. of Proc. (RP) at 774-76, 838-40.

The court struck Twitty's testimony that "Larry Mahone was a gang member" and instructed the jury to disregard the testimony. CP at 185.

The jury found Twitty guilty of attempted murder in the first degree, unlawful possession of a firearm in the first degree, and assault in the first degree. The jury also found Twitty was armed with a firearm during the commission of the attempted murder in the first degree.

The court imposed a standard range sentence of 316 months for the attempted murder in the first degree conviction and 60 months for the firearm enhancement for a total confinement period of 376 months. The court imposed 24 to 48 months of community custody and ordered him to have no contact with the victim or his family and no association with any known gang member. The court also sentenced Twitty to 75 months for unlawful possession of a firearm to run

3

concurrently with his sentence for attempted murder. The court imposed a $500 VPA fee and a $100 DNA collection fee along with $28,942.90 in restitution.

Twitty unsuccessfully appealed his convictions. *See State v. Twitty*, noted at 157 Wn. App. 1057 (2010).

III.    *BLAKE* RESENTENCING

In 2021, in light of *State v. Blake*,[1] Twitty filed a motion seeking to vacate his judgment and be resentenced using a corrected offender score that did not include his conviction for unlawful possession of a controlled substance. He also argued his juvenile arson conviction should be excluded from his offender score because he was 14 years old on the crime date and his plea agreement contained language suggesting the offense would not be included in any adult offender score calculations because he was younger than 15. The State argued his juvenile arson conviction should have been scored as two points in his offender score calculation and that his offender score should actually increase.

In its response to Twitty's resentencing memorandum, the State recounted that "[w]itnesses report that Mahone stated that gang members of the 'Hilltop Crips' were looking for him[,] [and] [w]itnesses identified Twitty as shooting Mahone." CP at 62. At Twitty's *Blake* resentencing hearing, in describing the factual history of the case, the State said, "This is an attempted murder, Your Honor, in which it was a gang-related shooting that appears to be involving the Hilltop Crips." RP (Mar. 31, 2023) at 7. In response, Twitty stated, "[the State] was wrong about when [it] said the Hilltop Crips and Lakewood, you know, that was something totally not even me." RP (Mar. 31, 2023) at 25. The resentencing court addressed neither characterization.

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021) (voiding convictions for unlawful possession of controlled substance).

Twitty also provided evidence of his rehabilitation, including 13 letters from people who spoke on his behalf, positive commendations from prison staff, and certificates for completing classes while incarcerated. Two individuals Twitty mentored in prison also spoke on his behalf at the resentencing.

The resentencing court expressed that it could consider evidence of rehabilitation but was not required to do so. Addressing the State, the court stated:

> Your cite to *State v. Ramos*[, 187 Wn.2d 420, 387 P.3d 650 (2017),] on the issue of considering rehabilitation since—I mean, *Ramos* stands for the proposition of the court is not required to consider it.
>      . . . .
> So *Ramos* does not stand for—at least when I read it—the position that the court can't, just that it's not required.

RP (Mar. 31, 2023) at 9.

Twitty's counsel agreed that this was an accurate assessment of the law, stating:

> I would—the Court asked the prosecutor the question about *Ramos*, and I would agree with that assessment that the Court can give whatever weight, including no weight, to rehabilitation.

RP (Mar. 31, 2023) at 13.

The resentencing court went on to express uncertainty about the proper role rehabilitation evidence should have in a *Blake* resentencing:

> If you are talking about the ability of the Court to consider rehabilitation—and we went through *Ramos* and such—my question has always been on these cases, when the *Blake* offense was not part of the offense at issue—there seems, to me, kind of the anomaly of someone who gets a benefit by committing a prior crime.
>      So that someone in your client's position, exactly the same facts, but who didn't have the prior *Blake* conviction would not have the ability to be in front of Court today.
>      . . . .
>      And so there is always a balancing between the issue of what happened to the victims and the facts that occurred then, and then there is the issue of what's happened since the person has been incarcerated.

5

> I have asked the question, again, of is this a windfall to be able to come before the court again and such, and, again, that question is not really answered, but it is what it is; it's before me.
>
> . . . .
>
> So there is the issue—we mentioned *State v. Ramos*—again, certainly not required for the Court to consider, but I have read all the materials that were provided.
>
> So in the end, what the court is going to do is give a standard range sentence.

RP (Mar. 31, 2023) at 15, 28-29.

The resentencing court ultimately excluded the juvenile arson conviction from Twitty's offender score and imposed a standard range sentence. However, a juvenile assault conviction remained in his offender score. The court imposed 278 months for the attempted murder in the first degree conviction and 60 months for the firearm enhancement for a total confinement period of 338 months. The community custody conditions imposed at his first sentencing were largely the same, including 36 months of community service,[2] no contact with the victim or his family, and no association with any known gang member. The court ordered a $500 VPA fee and a $100 DNA collection fee, along with $28,942.90 in restitution.

Twitty appeals his post-*Blake* resentence.[3]

Additional facts relevant to the analysis are included below.

## ANALYSIS

I. OFFENDER SCORE

In March 2023, when Twitty was resentenced, RCW 9.94A.525(1) did not contain a provision excluding juvenile convictions from offender score calculations. However, while his

---

[2] This is the only community custody condition that was different. At Twitty's first sentencing hearing, he was sentenced to 24 to 48 months of community custody. At resentencing, he was sentenced to 36 months of community custody.

[3] After Twitty filed this appeal, the court found him indigent.

case was on appeal, the legislature amended RCW 9.94A.525(1) such that "adjudications of guilt pursuant to Title 13 RCW [juvenile courts and juvenile offenders] which are not murder in the first or second degree or class A felony sex offenses may not be included in the offender score." RCW 9.94A.525(1)(b). This amendment was enacted May 11, 2023 and took effect on July 23, 2023. LAWS OF 2023, ch. 415, § 2.

Twitty argues the resentencing court erred by failing to apply RCW 9.94A.525(1)(b) prospectively to his case because the appropriate triggering date is the termination of his appeal and that we should remand for resentencing using an offender score that does not include his juvenile assault conviction. The State argues the court did not err by calculating Twitty's offender score under the law in effect at the time of Twitty's offense.[4] We agree with the State and affirm because RCW 9.94A.525(1)(b) does not apply to cases on appeal.

A.      Standard of Review

Statutory interpretation is a question of law reviewed de novo. *State v. Yancey*, 193 Wn.2d 26, 30, 434 P.3d 518 (2019). The goal of statutory interpretation is to carry out the legislature's intent. *Id.* "Where the language of a statute is clear, legislative intent is derived from the language of the statute alone." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). If the language of the statute is unambiguous, the inquiry ends, and the court must enforce the statute "in accordance with its plain meaning." *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). When determining the plain meaning of a statute, courts "'must not add words where the legislature has chosen not to include them,' and [courts] must 'construe statutes such that all of the

---

[4] The State also argues legislative history shows RCW 9.94A.525(1)(b) was not intended to apply to crimes committed before the effective date of the statute. Since the statute is unambiguous, however, we need not address its legislative history. *See State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) ("Plain language that is not ambiguous does not require construction.").

7

language is given effect.'" *State v. James-Buhl*, 190 Wn.2d 470, 474, 415 P.3d 234 (2018)

(quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

    B.    Legal Principles

Generally, "sentences imposed under the [Sentencing Reform Act] SRA are . . . meted out

in accordance with the law in effect at the time of the offense." *State v. Jenks*, 197 Wn.2d 708,

714, 487 P.3d 482 (2021) (referencing RCW 9.94A.345; RCW 10.01.040). RCW 9.94A.345 and

RCW 10.01.040 govern the effect statutory amendments have on sentencing. *State v. Tester*, ___

Wn. App. ___, 546 P.3d 94, 96 (2024). RCW 9.94A.345 unambiguously requires that "[e]xcept

as otherwise provided in this chapter [the SRA], any sentence imposed under this chapter shall be

determined in accordance with the law in effect when the current offense was committed." *See*

*also Jenks*, 197 Wn.2d at 715. Similarly, RCW 10.01.040, which is the general savings clause,

directs that

> [w]henever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, unless a contrary intention is expressly declared therein.

To preclude RCW 10.01.040 from applying, "the legislature must express its intent 'in

words that fairly convey that intention.'" *Tester*, 546 P.3d at 97 (internal quotation marks omitted)

(quoting *Jenks*, 197 Wn.2d at 720).

In some circumstances, statutory amendments can apply to criminal cases on appeal. For example, in *State v. Ramirez*, the Washington Supreme Court held that a statutory amendment prohibiting imposition of post-conviction costs on defendants applied to cases pending on direct appeal. 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018). However, in *Jenks*, the court declined to extend the reasoning in *Ramirez* to a case involving a sentencing statute. 197 Wn.2d at 723.

In *Jenks*, the defendant was convicted of robbery in the first degree. *Id.* at 711. He was sentenced under the Persistent Offender Accountability Act (POAA) of the SRA, because the court found he had two previous strike offenses. *Id.* One of those previous offenses was robbery in the second degree. *Id.* While Jenks's case was pending on appeal, the legislature removed robbery in the second degree from the list of offenses that counted as strikes under the POAA. *Id.* He argued the change in law should apply to him since his case was still pending on appeal. *Id.* The Washington Supreme Court held that the change did not apply to Jenks's case because of RCW 9.94A.345 and RCW 10.01.040. *Id.* at 718-19, 722.

Further, the court explained that "'[a] statute applies prospectively . . . if the precipitating event under the statute occurred after the date of enactment.'" *Id.* at 722 (quoting *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 809, 272 P.3d 209 (2012)).[5] "'To determine what event

---

[5] There is some confusion in the case law regarding whether it is the date of enactment or the effective date of a statute that is controlling. *Jenks* quotes *Carrier*, that states, "[a] statute applies prospectively if the precipitating event under the statute occurred after the *date of enactment*." *Carrier*, 173 Wn.2d at 809 (emphasis added). However, *Carrier* relies on, but paraphrases imprecisely from *Ludvigsen v. City of Seattle*, that actually states that "[a] statute operates prospectively 'when the precipitating event for its application occurs after the *effective date of the statute*.'" 162 Wn.2d 660, 668, 174 P.3d 43, 47 (2007) (emphasis added) (quoting *State v. T.K.*, 139 Wn.2d 320, 329-30, 987 P.2d 63, 980 P.2d 1286 (1999)); *see also Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974). This confusion does not make a practical difference here, however, since Twitty's sentencing occurred before both the date of enactment and the effective date of the statute.

precipitates or triggers application of the statute,'" we look to the subject matter regulated by the statute.'" *Jenks*, 197 Wn.2d at 722 (quoting *Carrier*, 173 Wn.2d at 809). In *Jenks*, the statute at issue regulated who qualified as a persistent offender and therefore, the triggering event was Jenks's conviction for robbery in the first degree, which occurred before the statutory amendment at issue was enacted. 197 Wn.2d at 722-23. Accordingly, the court held the amendment did not apply to Jenks's case on appeal. *Id.* at 723.

Similarly, here, Twitty argues the legislative amendment to RCW 9.94A.525(1) excluding most juvenile offenses from offender score calculations should be applied to his case on appeal. Since RCW 9.94A.525(1) concerns offender score calculations, "[t]he triggering event . . . is the defendant's sentencing for a conviction, at which the offender score is calculated." *Tester*, 546 P.3d at 98. The triggering event for the statutory amendment to apply in Twitty's case is his original sentencing that occurred in March 2023. Since this sentencing occurred before the statutory amendment was enacted in May 2023, RCW 9.94A.525(1)(b) does not apply.[6] Therefore, the resentencing court did not err in relying on the previous version of RCW 9.94A.525(1) that did not contain a provision excluding juvenile convictions from offender score calculations.

To circumvent RCW 10.01.040, RCW 9.94A.345, and *Jenks*, Twitty relies on *State v. Jefferson*, 192 Wn.2d 225, 429 P.3d 467 (2018), to argue that the triggering event for application of the statutory amendment should be the end of his appeal.

---

[6] *See also State v. Troutman*, No. 84054-1-I (Wash. Ct. App. Apr. 8, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/840541.pdf, petition for review filed, No. 103039-8. .

In *Jefferson*, the Washington Supreme Court held that GR 37, which attempted to eliminate improper bias in jury selection, did not apply to the defendant's case still on appeal because the triggering event for application of the statute was the voir dire process which occurred prior to the effective date of GR 37. 192 Wn.2d at 243, 246-48.

However, "[a]lthough *Jefferson* contains some expansive language indicating that 'a newly enacted statute . . . generally applies to all cases pending on direct appeal and not yet final[,]' it did not involve an amendment to a statute affecting sentencing." *State v. Molia*, 12 Wn. App. 2d 895, 902, 460 P.3d 1086 (2020) (quoting *Jefferson*, 192 Wn.2d at 246). Since *Jefferson* did not concern amendments to sentencing statutes, but rather court rules involving jury selection, these statements need not be followed.

Twitty also argues that RCW 9.94A.525(1)(b) is remedial and should apply to his pending case even though his sentence occurred prior to the effective date of the amendment. "[R]emedial statutes are generally enforced as soon as they are effective, even if they relate to transactions predating their enactment." *State v. Pillatos*, 159 Wn.2d 459, 473, 150 P.3d 1130 (2007). But a remedial statute generally only relates "to practice, procedure, or remedies and does not affect a substantive or vested right." *Jefferson*, 192 Wn.2d at 248. The "changes to criminal punishments are substantive, not procedural." *Jenks*, 197 Wn.2d at 721.

RCW 9.94A.525(1)(b) changes a criminal punishment and is, therefore, substantive. This means it is not remedial and cannot apply to Twitty's pending appeal. Accordingly, we hold that the resentencing court did not err in including a juvenile assault conviction in Twitty's offender score.

II.    RESENTENCING CONSIDERATIONS

Next, Twitty argues the resentencing court abused its discretion by not considering evidence of his rehabilitation. The State argues Twitty cannot appeal his standard range sentence.[7] We conclude the resentencing court did consider rehabilitation evidence.

A.    Standard of Review

A standard range sentence is generally not appealable. RCW 9.94A.585(1); *State v. Williams*, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003). However, a defendant may challenge the "underlying legal conclusions and determinations by which a court comes to apply a particular sentencing provision." *Williams*, 149 Wn.2d at 147. Therefore, a defendant may seek review "for the correction of legal errors or abuses of discretion in the determination of what sentence applies." *Id.*

"An appellate court will reverse a sentencing court's decision only if it finds a clear abuse of discretion or misapplication of the law." *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). A court abuses its discretion when it bases a decision on manifestly unreasonable or untenable grounds. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). Manifestly unreasonable decisions are those "'outside the range of acceptable choices, given the facts and the applicable legal standard.'" *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d

---

[7] The State also argues that if the court did not consider evidence of Twitty's rehabilitation, there is still no abuse of discretion because Twitty invited the error when his counsel said, the court "'can give whatever weight, including no weight, to rehabilitation.'" Br. of Resp't. at 21 (quoting RP (Mar. 31, 2023) at 13). This argument, however, is misguided because Twitty does not complain on appeal that the court considered his rehabilitation evidence and gave it no weight. Instead, he argues that the court did not think it should even consider such evidence. At resentencing, Twitty's counsel argued that the court could give any weight to rehabilitation evidence but that it should consider it. Twitty argues this further on appeal. Therefore, Twitty did not invite the error he now complains of and is not barred from raising the issue now.

1362 (1997)). Untenable grounds are based on "'factual findings . . . unsupported by the record.'" *Id.* (quoting *Littlefield*, 133 Wn.2d at 47).

### 1. Rehabilitation Evidence

"[U]nless the reviewing court restricts resentencing to narrow issues, any resentencing should be de novo." *State v. Dunbar*, 27 Wn. App. 2d 238, 244, 532 P.3d 652 (2023). In *Ramos*, the Washington Supreme Court held that a resentencing court *may* but is not constitutionally required to consider evidence of rehabilitation. 187 Wn.2d at 449..

Twitty relies on *Dunbar* to argue that the resentencing court abused its discretion in not considering evidence of his rehabilitation.

Even if we were to read *Dunbar* to require a court to consider evidence of rehabilitation, Twitty's argument is inapposite, because the resentencing court here did consider evidence of Twitty's rehabilitation. Unlike *Dunbar*, at Twitty's resentencing, the court stated that rehabilitation evidence could, but was not required to, be considered. The record shows that the resentencing court heard rehabilitation evidence from two witnesses and concluded "[t]here is the issue . . . [of rehabilitation] again, certainly not required for the Court to consider, but I have read all the materials that were provided. . . . So in the end, what the Court is going to do is give a standard range sentence." RP (Mar. 31, 2023) at 28-29.

There is nothing in the record to suggest the resentencing court did not sentence Twitty de novo and exercise its discretion in choosing a standard range sentence. That the resentencing court exercised its discretion is strongly supported by the fact that the new standard range sentence was

more favorable to Twitty than his original standard range sentence.[8]   Accordingly, we hold that the resentencing court did consider Twitty's evidence of rehabilitation and did not abuse its discretion.

### 2.      Gang-Related Statements

Twitty also argues the resentencing court abused its discretion and violated the "real facts" doctrine by relying on the State's response to his sentencing memorandum[9] and characterization that this "'was a gang-related shooting that appears to be involving the Hilltop Crips.'"  Br. of Appellant at 30 (quoting RP (Mar. 31, 2023) at 7).  He argues such evidence was excluded from trial and, therefore, should not have been considered by the resentencing court.  The State argues the court did not violate the "real facts" doctrine because Twitty failed to object at his resentencing and admitted to those facts at trial.  We agree with the State.

Chapter 9.94A RCW of the SRA limits what a court can consider at sentencing.  "The SRA . . . contains what has become known as the "real facts" doctrine." *State v. Houf*, 120 Wn.2d 327, 332, 841 P.2d 42 (1992).  Under RCW 9.94A.530(2), "[i]n determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing,

---

[8] Twitty's original sentence range for attempted murder in the first degree was 253.5-337.5 months. The midpoint of this range is 295.5 months.  Twitty was sentenced to 316 months for this offense. At his *Blake* resentencing, the standard range for this offense became 234 to316 months.  The midpoint for this range is 275.  Twitty was sentenced to 278 months.  This suggests, contrary to Twitty's argument, that the judge did consider evidence of his rehabilitation because his original sentence was closer to the high end of that range while his new sentence was closer to the midpoint of that range.  Therefore, his new sentence was more favorable to him.

[9] Twitty argues the court should not have relied on the State's response to his sentencing memorandum that stated, "Witnesses report that Mahone stated that gang members of the Hilltop Crips were looking for him.  Witnesses identified Twitty as shooting Mahone."  Br. of Appellant at 30 (quoting CP at 62).

or proven pursuant to RCW 9.94A.537." Facts that are acknowledged "include all those facts presented or considered during sentencing that are not objected to by the parties." *State v. Grayson*, 154 Wn.2d 333, 339, 111 P.3d 1183 (2005). Further, the Washington Supreme Court has held that "a sentencing judge is not limited to consideration of facts that would be admissible at trial." *State v. Herzog*, 112 Wn.2d 419, 430, 771 P.2d 739 (1989); *see* ER 1101(c)(3).

At Twitty's resentencing, the State did not claim Twitty was a member of the Hilltop Crips gang. The State merely characterized the incident as being gang related and said it appeared the Hilltop Crips were involved. At trial, Twitty testified that the victim threatened him with a gang-related threat and told him there was going to be a shootout with the Hilltop Crips. No evidence in the record suggests that the resentencing court relied on the State's characterization that Twitty's offense was gang related. However, even if the court did rely on it, there is no error.

Since Twitty did not lodge an objection to the State's characterization that the conflict was gang related, this fact was acknowledged, and the court could rely on it, under RCW 9.94A.530(2). Further, Twitty testified multiple times at trial that the conflict between him and the victim had gang-related undertones. Therefore, the resentencing court could rely on this fact as being admitted for sentencing purposes, in accordance with RCW 9.94A.530(2).[10] Thus, we hold that the resentencing court did not abuse its discretion even if it did rely on the State's characterization that Twitty's offense was gang related.

---

[10] Twitty also asserts that such evidence should not have been relied on by the court because the State sought to exclude evidence of gangs at trial. However, Twitty himself nonetheless testified about the incident being gang related at trial. The fact of the State's motion is immaterial.

III.     VPA AND DNA COLLECTION FEES

Next, Twitty argues the resentencing court's order requiring him to pay a $500 VPA fee and a $100 DNA collection fee is unauthorized due to recent legislative amendments and the fact that the court found him indigent. He requests that these fees be struck from his sentence. The State concedes. We accept the State's concession.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the crime victim penalty assessment on indigent defendants. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048, *petition for review filed*, 102378-2 (2023). The legislature also amended RCW 43.43.7541 to require waiver of a DNA collection fee imposed before July 1, 2023 upon the defendant's motion. RCW 43.43.7541(2).

Here, Twitty was found indigent and requested the DNA collection fee imposed in March 2023 be struck. In light of these statutory changes, we remand with instructions to strike the VPA and DNA collection fees.

IV.     STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In a statement for additional grounds for review (SAG), Twitty argues he received ineffective assistance of counsel and that the trial court abused its discretion by not appointing new counsel at trial.

RAP 10.10(a) requires that a SAG "discuss those matters related to the decision under review." Since the issues raised in Twitty's SAG are outside the scope of his resentencing, we decline to review them.

CONCLUSION

We affirm Twitty's sentence, but remand with instructions to strike the VPA and DNA collection fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, A.C.J.

We concur:

Lee, J.

Price, J.