# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58786-6-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| SCOTT PERRIN, | |
| Respondent. | |

CHE, J.—The State appeals Scott Perrin's sentence and the trial court's determination that Perrin's convictions for second degree assault while armed with a deadly weapon and felony harassment were the same criminal conduct.[1]

One evening, Perrin left threatening text and voice messages, directed at Troy Brisby, on Shireela Kennedy's phone. Later that same night, Perrin "lunged" a sword through the driver's side window of the car Brisby was driving. The jury found Perrin guilty of felony harassment and second degree assault. The jury also returned a special verdict finding that Perrin committed the assault while armed with a deadly weapon.

---

[1] In its notice of appeal, the State says it is appealing the trial court's same criminal conduct determination and the trial court's denial of the State's motion for reconsideration of the same. But in its opening brief, the State says it is appealing the trial court's same criminal conduct determination and Perrin's sentence. The State does not address its motion for reconsideration beyond its statement of the case. Therefore, we do not address the motion for reconsideration. RAP 10.3(a)(6), *State v. Coleman*, 6 Wn. App. 2d 507, 516 n.34, 431 P.3d 514 (2018) (stating we need not consider issues that are not argued).

At sentencing, Perrin argued that his crimes were the same criminal conduct. The trial court agreed.

Perrin requested a mental health sentencing alternative (MHSA), which the State opposed. The court imposed the MHSA. The court did not specifically address the deadly weapon sentencing enhancement, and sentenced Perrin to "zero confinement" and a community custody term. Subsequently, the State moved for reconsideration of the same criminal conduct ruling, which the court denied.

On appeal, the State argues that the trial court erred when it (1) determined that Perrin's convictions for second degree assault and felony harassment were the same criminal conduct and (2) sentenced Perrin to zero confinement under the MHSA when it should have sentenced Perrin to serve one year in total confinement pursuant to the deadly weapon sentencing enhancement statute. Perrin concedes that the trial court erred in its same criminal conduct ruling.

We hold that Perrin's crimes are not the same criminal conduct. We also hold that it is ambiguous whether a sentencing court waives the deadly weapon sentencing enhancement as part of the standard sentence range under the MHSA and, thus, the rule of lenity applies in Perrin's favor.

Accordingly, we affirm the trial court's MHSA sentence but reverse the trial court on its same criminal conduct determination and remand to the trial court to correct Perrin's offender score in his judgment and sentence consistent with this opinion and resentence Perrin if appropriate.

FACTS

I. BACKGROUND

Perrin, Brisby, and Kennedy were friends. Brisby and Kennedy had dated in the past. It appears that Perrin was romantically interested in Kennedy.

One evening in August 2022, Brisby's bicycle was placed under the stairs of Kennedy's apartment complex. That same evening, Perrin went to Kennedy's apartment complex to visit a friend, saw Brisby's bicycle and saw Brisby and Kennedy embracing, and became upset.

Perrin then took Brisby's bike "to hurt him." Rep. of Proc. (RP) at 213. Afterward, at around 1:00 a.m., Perrin left threatening text and voice messages, directed at Brisby, on Kennedy's phone. One text message stated:

> And you can tell that motherf[***]er not to come around -- around me. Don't even f[***]ing think about it. I'll cut his f[***]ing throat. And if he wants his bicycle, he should go up to Fourth (inaudible) right now, go right -- right about dead center, the over- -- the 205 overpass and look down because that's where I threw it. And if you want to come at me for it, be my guest. I'm -- I'm right here. Go.

RP at 97-98. In one voice message, Perrin stated:

> So what's []he got on you anyway? It must be really f[***]ing good. But why don't you tell this bitch ass to come downstairs across the street so I can kick his f[***]ing ass? I'm not going to stop until I put him in a f[***]ing grave. Tell him. Tell this bitch ass to come downstairs. I'm waiting across the street. I'm waiting. Send Troy [Brisby] my way. He's through.

RP at 104. In another voice message, Perrin stated, "You know I'd like nothing better than to f[***]ing cut [Brisby's] throat." RP at 107. Upon reading and hearing the text and voice messages in Kennedy's apartment, Brisby feared that Perrin would carry out his threats.

3

After an unsuccessful search for Brisby's bicycle, Kennedy and Brisby decided to go to Perrin's house to give back some of his belongings and inquire about Brisby's bicycle. At around 3:00 or 4:00 a.m., Brisby drove Kennedy's car to Perrin's house.

As Brisby and Kennedy neared Perrin's house, they saw Perrin standing in the middle of the road. Perrin approached the driver's side window of Kennedy's car, which was down, and recognized Brisby as the driver. Perrin pulled out a sharpened sword and "lunged" it through the window toward Brisby's neck. RP at 88. Brisby raised his hand to deflect the sword strike. The strike and retraction of the sword caused multiple cuts to Brisby's hand and fingers and a cut to the seatbelt in the vicinity of Brisby's neck. Brisby immediately drove away.

Brisby and Kennedy called the police a couple of days later. In an interview with police, Perrin acknowledged sending the messages and that he "absolutely did mean it" when he sent them. RP at 214. In response to whether Brisby's DNA would be on the sword, Perrin stated, "Yeah, probably." RP at 217.

The State charged Brisby with felony harassment and first degree assault while armed with a deadly weapon, among other crimes.[2] At trial, the trial court instructed the jury to consider whether Perrin was guilty of the lesser crime of second degree assault if it was not satisfied beyond a reasonable doubt that Perrin was guilty of first degree assault. The trial court also instructed the jury to consider, for purposes of the special verdict on first and second degree

---

[2] The State also charged Perrin with second degree malicious mischief and second degree theft. The State filed an amended information, but it is not included in the record on appeal. The amended information appears to have reduced the malicious mischief and theft counts to gross misdemeanor offenses, which are not relevant to this appeal.

assault, whether Perrin was armed with a deadly weapon at the time of the commission of the assault.

The jury found Perrin guilty of felony harassment and second degree assault. The jury also found by special verdict that Perrin committed the second degree assault while armed with a deadly weapon.[3]

## II. SENTENCING

After trial, Perrin filed a memorandum arguing that his crimes of second degree assault and felony harassment were "the same course of conduct"[4] because they were committed against the same victim, close to the same time, and with the same criminal intent. Clerk's Papers (CP) at 58. At sentencing, the State argued that Perrin's crimes were "separate events . . . separated in time . . . [with] different actions [and] different intent." RP at 372. The trial court ruled "the two charges were [the] same course of conduct."[5] RP at 372.

---

[3] The jury also convicted Perrin of third degree theft but could not reach a unanimous verdict on third degree malicious mischief. The State does not challenge this conviction on appeal.

[4] The trial court and parties used the phrase "same course of conduct" rather than "same criminal conduct." Rep. of Proc. at 372, RCW 9.94A.589(1)(a).

[5] In the judgment and sentence, the trial court did not check the "same criminal conduct" box and indicated Perrin's offender score was "3," but based on its same criminal conduct ruling, the court interlineated the standard sentencing ranges for an offender score of "2." CP at 65-66. The standard sentencing range for second degree assault with 2 points is 12 months and one day to 14 months. The deadly weapon other than a firearm enhancement on a class B felony carried 12 months of total confinement. RCW 9.94A.533(4)(b).

Perrin asked the trial court to impose an MHSA[6] and requested 36 months of community custody. The State opposed Perrin's request. The court imposed the MHSA, finding that Perrin met all eligibility criteria. The court did not impose the deadly weapon enhancement, instead sentencing Perrin to "zero confinement" and 36 months of community custody. RP at 410.

The State sought reconsideration of the trial court's ruling, arguing that our Supreme Court's recent decision in *State v. Westwood,* 2 Wn.3d 157, 534 P.3d 1162 (2023), required the court to look at the statutory definitions of the crimes to determine each crime's objective intent and that Perrin's convicted crimes had different objective intents. The State also reiterated that the crimes did not occur at the same time or place. The trial court denied the State's motion.

The State appeals.

ANALYSIS

I. WAIVING A DEADLY WEAPON ENHANCEMENT UNDER THE MHSA

The State argues that the trial court erred when it sentenced Perrin to zero confinement under the MHSA when it should have required Perrin to serve one year in total confinement pursuant to the deadly weapon sentencing enhancement statute.[7] Specifically, the State contends that "[w]hatever waiving the standard range means in the context of the [MHSA], it cannot

---

[6] Under RCW 9.94A.695(1), a defendant is eligible for the MHSA if (1) they are convicted of a felony that is not a serious violent offense or sex offense, (2) they are diagnosed with a serious mental illness recognized by the diagnostic manual used by mental health professionals at the time of sentencing, (3) the community would benefit from the supervision and treatment of the defendant, and (4) they are willing to participate in the MHSA.

[7] Preliminarily, Perrin argues that the State may not raise the issue of the deadly weapon enhancement for the first time on appeal. We disagree. Under established case law, "'illegal or erroneous sentences may be challenged for the first time on appeal.'" *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008) (quoting *pin* 137 Wn.2d 472, 477, 973 P.2d 452 (1999)). Thus, the State may raise the issue of the deadly weapon enhancement for the first time on appeal.

include not imposing total confinement for the deadly weapon enhancement, let alone not imposing the deadly weapon enhancement at all." Br. of Appellant at 30. Perrin argues that we should affirm the MHSA sentence under the rule of lenity because the interplay between the MHSA and deadly weapon enhancement statutes is ambiguous. We agree with Perrin that the statutes are ambiguous and, in applying the rule of lenity in Perrin's favor, we affirm his MHSA sentence.

A.    *Legal Principles*

We review de novo issues of statutory interpretation. *State v. Jenks*, 197 Wn.2d 708, 713, 487 P.3d 482 (2021).

When we interpret a statute, our aim is to determine and give effect to the legislature's intent. *State v. Brown*, 194 Wn.2d 972, 975, 454 P.3d 870 (2019). To determine legislative intent, we look first at the statute's plain language. *Id.* at 975-76. In determining the statute's plain language, we may consider the language of the provision in question, the context of the statute in which we find the provision, related provisions, and the statutory scheme as a whole. *State v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015). When possible, we read statutes as complementary rather than conflicting. *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 412, 377 P.3d 199 (2016).

If the plain language is unambiguous, our analysis ends, and we apply the statute's plain language. *Jenks*, 197 Wn.2d at 714. But if the statute is susceptible to two or more interpretations, it is ambiguous, and we then try to ascertain the legislature's intent by considering other indications of legislative intent, including relevant case law, legislative history, and principles of statutory construction. *State v. Lake*, 13 Wn. App. 2d 773, 777, 466 P.3d 1152

(2020). We also apply recognized principles of statutory construction to ascertain the legislature's intent when unambiguous statutes conflict. *State v. Buck*, 2 Wn.3d 806, 819, 544 P.3d 506 (2024). In doing so, we aim to reconcile and give effect to the conflicting statutes. *Id*.

If a penal statute is ambiguous or statutes are in irreconcilable conflict, we apply "the rule of lenity," strictly construing the ambiguous statute in favor of the defendant. *State v. Evans*, 177 Wn.2d 186, 193, 298 P.3d 724 (2013), *see also State v. Kron*, 63 Wn. App. 688, 694, 821 P.2d 1248 (1992). But we do not apply the rule of lenity where we can reconcile statutes in a way that reflects the legislature's clear intent. *State v. Oakley*, 117 Wn. App. 730, 734, 72 P.3d 1114 (2003).

Under RCW 9.94A.695(4), if an MHSA is appropriate, "the court shall waive imposition of the sentence within the standard range. The court shall impose a term of community custody between 12 and 24 months if the midpoint of the defendant's standard range sentence is less than or equal to 36 months, and a term of community custody between 12 months and 36 months if the midpoint of the defendant's standard range sentence is longer than 36 months. The actual length of community custody within these ranges shall be at the discretion of the court."

B. *Applying the Rule of Lenity, a Sentencing Court Waives the Deadly Weapon Sentencing Enhancement as Part of the Standard Range Under the MHSA*

Determining whether a sentencing court may waive the imposition of a deadly weapon enhancement under the MHSA requires us to engage in statutory interpretation.

RCW 9.94A.533(4)(b) provides that one year of "additional time[] shall be added to the standard sentence range" for a felony crime if the defendant was armed with a deadly weapon

other than a firearm and is sentenced for a class B felony.[8]  RCW 9.94A.533(4)(e) then states that "[n]otwithstanding any other provision of law, all deadly weapon enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter."  But the MHSA statute states, "If the sentencing court determines that a sentence under this section is appropriate, the court shall waive imposition of the sentence within the standard range."  RCW 9.94A.695(4).

The State argues RCW 9.94A.533(4)(b) and (e) require the sentencing court to impose all deadly weapon enhancements to be served in total confinement, otherwise, portions of the statutes would be rendered inoperative.[9]  Perrin contends that the meaning of .533 and .695 in light of the other is ambiguous because the meaning is susceptible to at least two reasonable interpretations: (1) that when a trial court imposes the MHSA, it may waive a standard range sentence that includes a deadly weapon enhancement, or (2) that when imposing the MHSA, it may not waive imposition of a deadly weapon enhancement because it is mandatory.  We agree with Perrin.

---

[8] Second degree assault is a class B felony except when a person causes substantial bodily harm to an unborn quick child by unlawfully and intentionally inflicting injury upon the mother of the unborn child, or when a person commits second degree assault with a finding of sexual motivation.  RCW 9A.36.021(2)(a), (b).

[9] To the extent the State argues that the language "notwithstanding any other provision of the law," in RCW 9.94A.533(4)(e) means precluding all other statutes, we find it unpersuasive.  In *State v. McFarland*, the Supreme Court determined that use of "notwithstanding any other [provision of the] law," in another statute, did not preclude different interpretations.  189 Wn.2d 47, 54, 399 P.3d 1106 (2017).  The court consulted legislative history to resolve the ambiguity. *Id*.

The plain language of the two statutes is ambiguous as to whether a "sentence within the standard range," which the trial court must waive if it determines that a MHSA sentence is appropriate, includes the confinement required by a deadly weapons enhancement or not. RCW 9.94A.533(4) states that the deadly weapon sentencing enhancement is time "*added* to the standard sentence range." And RCW 9.94A.030(49) defines a "standard sentence range" as "the sentencing court's discretionary range in imposing a nonappealable sentence." However, neither of these clarify whether, once the deadly weapon enhancement is added to the standard sentence range, the resulting range becomes a "sentence within the standard range" that the trial court can waive under the MHSA or not.

RCW 9.94A.530(1), in providing the procedure through which a sentence range is determined, does not add any clarity. This provision provides that the defendant's offender score and the offense's seriousness score "determines the standard sentence range." RCW 9.94A.530(1). Then, "[t]he additional time for deadly weapon findings or for other adjustments as specified in RCW 9.94A.533 shall be added to the entire standard sentence range." RCW 9.94A.530(1). Finally, "[t]he court may impose any sentence within the range that it deems appropriate."[10] RCW 9.94A.530(1). On the one hand, this provision, like RCW 9.94A.533(4), describes an enhancement as time to be "added to," but ultimately is separate from, a "standard sentence range." But the sequence of these steps suggests that the standard range subsumes the deadly weapons enhancement.

---

[10] This provision concludes, "All standard sentence ranges are expressed in terms of total confinement." RCW 9.94A.530(1).

Because the meaning of RCW 9.94A.533 and RCW 9.94A.695, when read together, are susceptible to two or more reasonable interpretations, we turn to other potential indications of legislative intent to try to determine whether the legislature clearly intended the time of confinement of a deadly weapon enhancement to not be waivable under the MHSA. *See Lake*, 13 Wn. App. 2d at 777, *Evans*, 177 Wn.2d at 193 ("[W]e will interpret an ambiguous penal statute adversely to the defendant only if statutory construction 'clearly establishes' that the legislature intended such an interpretation.") (quoting *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 456, 219 P.3d 686 (2009)).

Here, principles of statutory construction and legislative history fail to resolve the ambiguity and illuminate the legislature's clear intent. "'[W]here the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent.'" *State v. Jackson*, 137 Wn.2d 712, 724, 976 P.2d 1229 (1999) (quoting *Seeber v. Pub. Disclosure Comm'n*, 96 Wn.2d 135, 139, 634 P.2d 303 (1981)).

Other sentencing alternatives, such as the drug offender sentencing alternative (DOSA) and parenting sentencing alternative (PSA), expressly exclude from eligibility defendants with convictions including deadly weapon enhancements. For example, RCW 9.94A.660(1)(a) states that a defendant is not eligible for the DOSA if they were convicted of a felony that is a violent offense and involves a firearm or deadly weapon enhancement. And RCW 9.94A.655(1)(b) similarly states that a defendant is not eligible for the PSA if they have a prior or current conviction for a felony offense where they were armed with a firearm or deadly weapon in the commission of the offense.

11

Had the legislature intended to exclude defendants with convictions including deadly weapon enhancements from participating in the MHSA, it could have explicitly done so using language similar to that in RCW 9.94A.660(1)(a) or RCW 9.94A.655(1)(b). While the legislature in the MHSA statute, RCW 9.94A.695(1)(a), specifically excluded from eligibility defendants convicted of a felony that is a serious violent offense or sex offense, it did not similarly exclude defendants with convictions including deadly weapon enhancements.

The bill reports available for Senate Bill 5293, which originally introduced the MHSA, do not provide much insight into the legislature's intent, but they do show that the legislature was aware of both sentencing enhancements and how they increase mandatory sentencing terms, and other sentencing alternatives like the DOSA and PSA. In the senate bill report, the background section states:

> Notwithstanding the standard range sentence, a number of other factors may apply to increase mandatory sentence terms for a defendant, including sentencing enhancements, mandatory minimum sentencing terms, determinate plus sentencing, and persistent offender sentencing.

> Certain sentencing alternatives have been enacted which allow the court to waive the usual standard range without finding grounds for an exceptional sentence. These alternatives frequently allow a term of community custody to be imposed in lieu of confinement and may require the person to engage in a form of treatment. Sentencing alternatives for adult felony defendants include the First-Time Offender Waiver, Parenting Sentencing Alternative, Drug Offender Sentencing Alternative, and Special Sex Offender Sentencing Alternative.

S.B. Rep. on S.B. 5293, 67th Leg., Reg. Sess. (Wash. 2021).

Case law does not provide a clear indication of the legislature's intent regarding the interplay between RCW 9.94A.533 and the MHSA.

In *State v. Brown*, our Supreme Court held that if RCW 9.94A. 310(4)(e) "is to have any substance, it must mean that courts may not deviate from the term of confinement required by

12

the deadly weapon enhancement." 139 Wn.2d 20, 29, 983 P.2d 608 (1999), *overruled on other grounds by State v. Houston-Sconiers*, 188 Wn.2d 1, 21, 391 P.3d 409 (2017). This is consistent with the State's position that the deadly weapon enhancement may not be waived but is arguably irreconcilable with the indicia of legislative intent regarding the MHSA, which was more recently enacted. *Compare* LAWS OF 2021, Ex. Sess., ch. 242, § 1, *with* LAWS OF 2002, Ex. Sess., ch. 290, § 11.

However, the issue in *Brown* was whether a trial court could impose an exceptional sentence below a mandatory deadly weapon enhancement confinement term. *Brown*, 139 Wn.2d at 23, 25. This is a separate question from whether the enhancement becomes a part of the standard range and, thus, is waivable under the MHSA. *See State v. Silva-Baltazar*, 125 Wn.2d 472, 475, 886 P.2d 138 (1994) ("An enhanced sentence is not an exceptional sentence, which allows the court to sentence outside the presumptive or standard sentencing range.").

The State cites multiple cases for the proposition that, similarly to *Brown*, courts have consistently found the deadly weapon enhancement to be unambiguous and its confinement to be mandatory. However, like *Brown*, each of these cases is inapposite as they address issues unrelated to the issue at hand. *See*, *e.g.*, *State v. Kelly*, 4 Wn.3d 170, 191, 195, 561 P.3d 246 (2024) (considering whether multiple enhancements can run concurrently), *State v. Mandanas*, 168 Wn.2d 84, 228 P.3d 13 (2010) (addressing the imposition of multiple enhancements for multiple enhancement-eligible offenses that amount to the same criminal conduct), and *State v. DeSantiago*, 149 Wn.2d 402, 417, 421, 68 P.3d 1065 (2003) (considering whether a trial court must impose multiple enhancements to a standard range sentence for a single offense).

13

In *State v. Mohamed*, Division One of this court held that "a sentencing court may waive the [school zone] enhancements as part of the standard sentence range under a DOSA or PSA." 187 Wn. App. 630, 641, 350 P.3d 671 (2015). The court reasoned that its conclusion was supported by the school-zone enhancement under RCW 9.94A.533(6) not including a requirement that the enhancement be served "in total confinement," unlike the firearm and deadly weapon enhancements under RCW 9.94A.533(3)(e) and 9.94A.533(4)(e). *Mohamed*, 187 Wn. App. at 641-42.

However, in *State v. Yancey*, our Supreme Court summarized Division One's holding in *Mohamed*, stating that "the trial court may waive the standard sentence range—*a range that includes any enhancements*—and impose a DOSA." 193 Wn.2d 26, 34, 434 P.3d 518 (2019) (emphasis added), *see also Gutierrez v. Dep't of Corr.*, 146 Wn. App. 151, 155, 188 P.3d 546 (2008) ("Uniformly, the enhanced range is considered a standard range term and a departure from that range is an exceptional sentence. . . . A sentence range increased by an enhancement is still a standard range sentence."). But then the Supreme Court held that "the trial court may not 'waive' sentence enhancements or portions of the base sentence to get to a range that is low enough to accommodate the residential-based DOSA's sentence-length prerequisites." *Yancey*, 193 Wn.2d at 34. With regard to deadly weapon or firearm enhancements, no court has made a similar holding to that of *Mohamed*.

We find no clear indication of the legislature's intent of the interplay between the MHSA and deadly weapon enhancement statutes. Therefore, under the rule of lenity we must interpret the statutes in favor of Perrin. *Evans*, 177 Wn.2d at 193.

14

Because it is ambiguous whether RCW 9.94A.533(4)(e) and RCW 9.94A.695(4) allow a trial court to waive a deadly weapon enhancement as part of a sentence under the MHSA, we apply the rule of lenity in Perrin's favor and conclude that the trial court can waive the enhancement. Accordingly, we hold that the trial court here did not err in sentencing Perrin to zero confinement under the MHSA.

## II. Perrin's Crimes Are Not the Same Criminal Conduct

The State argues that the trial court erred when it determined that Perrin's convictions for second degree assault while armed with a deadly weapon and felony harassment were the same criminal conduct. Specifically, the State contends that Perrin's crimes did not have the same criminal intent and occurred at different times and places. At oral argument before this court, Perrin conceded that his crimes were not the same criminal conduct because under *State v. Westwood*, 2 Wn.3d 157, 168-69, 534 P.3d 1162 (2023), the objective statutory intents for the crimes were not the same.[11]

Separate offenses can only qualify as the same criminal conduct if three elements are present: same criminal intent, same time and place, and same victim. *Id.* at 162, RCW 9.94A.589. "[A]n absence of any one [of the elements] precludes a finding of same criminal conduct." *Westwood*, 2 Wn.3d at 162.

In *Westwood*, our Supreme Court considered whether the defendant's convictions for first degree assault, first degree burglary, and attempted first degree rape were the same criminal conduct. *Id.* at 168. In doing so, the court applied an objective intent analysis and relied on the

---

[11] Wash. Ct. of Appeals oral argument, *State v. Perrin*, No. 58786-6-II (Mar. 20, 2025), at 22 min., 7 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2025031146.

statutory definitions of the offenses to determine whether the offenses had the same criminal intent. *Id.* at 167-68. "The statutory intent is relevant in determining whether the objective intent prong is satisfied. Looking to any other source of intent has the potential to lean too closely to the subjective analysis that we have always rejected." *Id.* at 167. Because the statutory definitions of intent for each offense were different, the court held that Westwood's offenses did not have the same objective criminal intent. *See id.* at 168-69.

Here, the objective statutory intents for Perrin's crimes are not the same. The statutory intent for second degree assault is to intentionally commit the physical act constituting assault, while for felony harassment it is to knowingly threaten to kill someone. RCW 9A.36.021(1)(c), .46.020(1)(a)(i), & (2)(b)(ii). Because the objective intent for Perrin's crimes were not the same nor similar, we do not look at whether the crimes furthered each other and were part of the same scheme or plan. *See Westwood*, 2 Wn.3d at 168 ("If the objective intent for the offenses were the same or similar, courts can then look at whether the crimes furthered each other and were part of the same scheme or plan."). And because the same criminal intent element is absent, this precludes a finding of same criminal conduct. *Id.* at 162.

Thus, we hold that the trial court erred in finding that Perrin's crimes were the same criminal conduct, and we remand for the trial court to correct Perrin's judgment and sentence to reflect the standard ranges for an offender score of 3.[12]

---

[12] Because Perrin's crimes do not have the same criminal intent, they are not the same criminal conduct, and we do not address whether the crimes occurred at the same time and place, and had the same victim.

CONCLUSION

We hold that it is ambiguous whether a sentencing court waives the deadly weapon

sentencing enhancement as part of the standard sentence range under the MHSA and, thus, the

rule of lenity applies in Perrin's favor. We also hold that Perrin's crimes are not the same

criminal conduct.

Accordingly, we affirm the trial court's MHSA sentence, but we reverse the trial court on

its same criminal conduct determination and remand to the trial court to correct Perrin's offender

score in his judgment and sentence consistent with this opinion and resentence Perrin if

appropriate.

_____
Che, J.

We concur:

_____
Maxa, P.J.

_____
Lee, J.